64 N.J. Super. 328 (1960)
165 A.2d 870
REGINA CHOSNEY AND FRANK CHOSNEY, PLAINTIFFS,
v.
ALLAN KONKUS AND CHARLES KONKUS, DEFENDANTS.
Superior Court of New Jersey, Essex County Court, Law Division.
Heard October 7, 1960.
Decided November 10, 1960.
*329 Messrs. Braff, Litvak and Ertag (Mr. Frederick J. Wortman appearing), attorneys for plaintiffs.
Messrs. Shaw, Pindar, McElroy, Connell & Foley (Mr. James M. Coolahan, Jr., appearing), attorneys for defendants.
Mr. Juan Ryan, attorney for proposed third-party defendant Regina Chosney.
WAUGH, A.J.S.C.
On May 11, 1960 the plaintiff Regina Chosney was a passenger in a motor vehicle being operated by her unemancipated infant son, which vehicle collided with a vehicle owned by the defendant Charles Konkus and operated by the defendant Allan Konkus. As a result of this collision, plaintiff allegedly suffered certain injuries and on September 7, 1960 instituted this action for damages. She was joined in the complaint by her husband, Frank Chosney, who sues per quod.
The defendants now apply to this court for an order granting them leave to file and serve a third-party complaint upon the unemancipated infant son therein seeking contribution under the Joint Tortfeasors Contribution Law, N.J.S. 2A:53A-1, et seq. Parenthetically, it is here noted that the proposed third-party complaint alleges nothing more than simple negligence.
The only issue to be decided here is whether or not, in a case of simple negligence, a tortfeasor may seek contribution in the same action from an alleged joint tortfeasor, where the latter is the unemancipated infant son of the plaintiffs.
*330 In opposition to this motion, the plaintiffs rely upon the cases of Cafaro v. Cafaro, 118 N.J.L. 123 (E. & A. 1937), reversing 14 N.J. Misc. 331 (Sup. Ct. 1936); Kennedy v. Camp, 14 N.J. 390 (1954); Tomkovich v. Public Service Coord. Transp., 61 N.J. Super. 270 (App. Div. 1960); and Hastings v. Hastings, 33 N.J. 247 (1960).
The defendants concede frankly that they have found no case which squarely supports their position. Nonetheless, they contend that the cases cited by the plaintiffs are distinguishable in that they either deal with direct actions between the parents and unemancipated children, or with the husband and wife disability as treated in cases involving the Joint Tortfeasors Contribution Law, supra.
In urging that their motion be granted, the defendants have said, in effect, that this is not the case where immunity would lie since as a third-party defendant there is not the willfulness of decision on the child's part to enter the action. It is advanced that this is not therefore the usual parent-child case and that the matter should be examined in that light.
The thesis that we are here dealing with a factual situation obviating the necessity for invoking immunity from suit does not consider that the unemancipated child's liability to the parents is sought to be contested herein with the same force and vigor as if he were the sole party defendant. It seems to me that the attempt to differentiate on the basis of status here merely creates a distinction without substantial difference.
While it is true, as the defendants urge, that in Kennedy v. Camp, supra, an action against a joint-tortfeasor husband was dismissed because of the statutory immunity which surrounds the principals to the marriage contract, it is equally true that the area with which we are now dealing has heretofore been marked by an immunity, born of public policy considerations, which prevented law suits between parent and unemancipated child. See Cafaro v. Cafaro, supra (parent's suit against an unemancipated child for his *331 negligence dismissed); Reingold v. Reingold, 115 N.J.L. 532 (E. & A. 1935) (unemancipated child prohibited from bringing suit against her parents in tort); and more recently, Hastings v. Hastings, supra. It is also true that immunity from suit need not rest solely upon statute, but it may be dictated in a given case by the weight of public policy. Hastings v. Hastings, supra.
In Hastings, supra, our Supreme Court refused to allow an unemancipated child to sue her parent for injuries suffered as a result of negligence and in doing so proclaimed that in matters of simple negligence a parent should not be held accountable to the child in money damages. The court also went on to say that:
"We believe that true family life * * * should not include among its foundation stones the concept of recompensable fault between parents and unemancipated children." Id., 33 N.J., at p. 251.
I am of the opinion that in matters of simple negligence an unemancipated child should not be held accountable to the parents in money damages and that the above cited language serves as sufficient authority for the imposition of immunity in this case.
It has been urged in support of this motion that in the event the proposed infant defendant is found to have been a real contributing cause of the plaintiff's injuries, they, the plaintiffs, cannot be heard to complain, since by virtue of contribution, the verdict is reduced as against the son and therefore works to his advantage. This presupposes that the parents originally could have maintained the action directly against the child, a premise with which the court disagrees. The defendants are unmindful of the practical aspects of this case. In addition to the fact that to grant the motion the infant defendant will be required to take a position contrary to that of his parents, the defense of such an action in an adversary proceeding is a costly one, which, except in rare cases, can hardly be borne by an unemancipated *332 seventeen-year-old child. Thus, it is not unreasonable to assume that the expenses of suit must be borne ultimately by the family estate which will then be depleted to the detriment of the entire family for whose care and welfare it was created and maintained. Is all this not then to be considered disruptive of the family scene? The answer unquestionably is in the affirmative.
The alternative to retention of counsel would be to permit a youth, unschooled in the ways of the law, to meet the test of liability without the aid or assistance of counsel. The possibilities of disruption of normal family ties through ignorance and inadvertence are myriad in such a situation; further, no true adversary proceeding  the cornerstone of our judicial system  would exist.
Of additional significance on this subject is the Supreme Court's apparent disapproval in Hastings, supra, of suits by parents against unemancipated children. (33 N.J., at p. 251).
Turning to the effect and application of the Joint Tortfeasors Law, supra, I conclude that the immunity from suit imposed herein precludes the defendants from suing the unemancipated child for contribution.
In Kennedy v. Camp, supra, the court declared that the plaintiff (judgment defendant) could not sue the judgment plaintiff's husband since the interspousal statutory immunity negated the concept of actionable liability running from the husband to his wife.
"Joint or several liability to the injured judgment plaintiff for the tortious conduct, enforceable by action, is a substantive element of the right." Id., 14 N.J., at p. 395. (Emphasis added)

* * * * * * * *
"The essence of the doctrine is a common obligation to the person injured by the common tortious conduct. Fault alone is not enough; there must be a joint liability to respond to the injured person * * *." Id., 14 N.J., at p. 398.
From what I have said before it is clear that there is no enforceable liability between the plaintiffs and the proposed *333 third-party defendant, and, therefore, the case is taken out of the remedial provisions of the act. Accordingly, since enforceability is a requisite to suit, and the immunity herein bars that enforceability, the motion must be denied.