In view of the foregoing, it is unnecessary to discuss defendant's motion to strike.

**ATLANTIC AVIATION CORPORATION, a Corporation of the State of Delaware, Plaintiff,**

v.

**The ESTATE of Emanuel COSTAS, deceased, and Josephine Costas, Individually and as Administratrix of the Estate of Emanuel Costas, deceased, Defendants.**

**No. 70 C 439.**

United States District Court, E. D. New York.

July 29, 1971.

Donald A. Robinson, New York City, for plaintiff.

James F. Coughlin, New York City, (Mendes & Mount, New York City, of counsel), for defendants.

## MEMORANDUM AND ORDER

DOOLING, District Judge.

This puzzling case arises out of the crash of a privately owned and piloted aircraft in which the owner-pilot Emanuel Costas, died and three passengers, his daughter, Carol, and two additional passengers, both of whom apparently were pilots themselves, McCabe and Porzio, were injured. The present case is a sequel to the two lawsuits which followed upon the crash, both of which suits were compromised. In the present action a defendant in both of the two settled lawsuits, a firm which had serviced the aircraft some months before the accident, sues to recover from the estate of the deceased owner-pilot Costas $25,-000 which plaintiff paid in the settlement of one of the lawsuits on account of the injuries sustained by the deceased owner-pilot's daughter, Carol, in the accident. On all of the facts such a recovery by the plaintiff would be so totally surprising an outcome that the problem in the case is locating the analysis which satisfactorily explains why the result would be not merely surprising but impossible under the applicable principles of law. For it is concluded that plaintiff may not recover and that the defendant is entitled to summary judgment.

The facts must be stated with some particularity. The decedent Emanuel Costas lived in Queens, New York. He had three children, Carol, Carl and Jackie; his wife, and later his administratrix in New York, was Josephine Costas. During his lifetime, Costas owned a Beechcraft airplane. He normally kept it in New York and on the fatal trip to be adverted to the original point of take-off was from Flushing, New York.

The plaintiff is a Delaware corporation; its principal place of business is in Delaware and it operates a service facility in Bergen County in New Jersey. In October 1962, Costas had his Beechcraft serviced at plaintiff's facility in New Jersey and plaintiff's involvement in the later litigations traces entirely to that servicing job of October 1962.

On or about May 30, 1963, Costas took off from Flushing, New York with three passengers, his daughter Carol, and Messrs. Porzio and McCabe. The aircraft must have touched down at Elkton, Maryland, because the accident happened very soon after a takeoff at Elkton, Maryland on May 30, 1963.

In September 1963 Porzio and McCabe sued the estate of Emanuel Costas for the injuries they sustained in the crash. The Costas Estate impleaded Atlantic Aviation, the present plaintiff on a claimover, and, it appears, McCabe and Porzio then asserted their claims both against the Costas estate and against Atlantic Aviation. A little over a year later, on October 29, 1964, the decedent's widow, Josephine Costas, sued Atlantic Aviation in New Jersey on her own behalf and on behalf of all three of the children for the pecuniary loss which they suffered by reason of their father's death—a loss for which they could recover under the law of Maryland (as they alleged) if and only if the deceased Costas could successfully have sued Atlantic Aviation if he had not died. The familial claim was pleaded in negligence, in contract, and in implied warranty. In addition the action comprehended a separate cause of action by the widow as administratrix of her husband's estate for his antemortem injuries, pain and suffering. Finally, the complaint em-

braced causes of action in negligence and warranty on behalf of Carol Costas for the personal injuries that she sustained in the accident.

On or about May 3, 1967, the McCabe and Porzio actions were settled by the payment of $22,500 to Porzio and $17,-500 to McCabe. The Costas estate contributed $37,000 to the settlement and Atlantic contributed $3,000 to the settlement. It does not appear that in that action Atlantic Aviation claimed over against the Costas estate for any amount for which Atlantic Aviation might be held directly liable to Porzio and McCabe.

About a year later on April 19, 1968, the Costas action against Atlantic Aviation in New Jersey was settled. In that case Atlantic paid $35,000 to Josephine Costas and she gave a release individually, as administratrix of her husband's estate and as the suitor on behalf of her three children. The settlement hearing was explicit that the distribution of the proceeds of the $35,000 settlement would be $25,000 to Carol, $1,000 between the two younger children, Carl and Jackie, and $9,000 to the widow, Josephine Costas. The court indicated that the settlement was a sensible one because liability was highly doubtful and would be most difficult to establish. An order of judgment was entered on the settlement on April 19, 1968 awarding judgment in pursuance of the settlement to Josephine Costas (a) for $25,000 on behalf of Carol Costas, (b) for $1,000 on behalf of Carl and Jackie Costas, and (c) for $9,000 on her own behalf; it was ordered that the causes of action on behalf of the four parties plaintiff would be dismissed with prejudice, the counsel fees to be apportioned among the several awards and that "any and all liabilities of Atlantic Aviation Corporation shall be discharged upon payment of this judgment in accordance with the terms of this order".

Atlantic Aviation now sues alleging the decedent's ownership of the aircraft, the servicing contract of October 1962 and the work done under it, the accident on takeoff from Elkton, the death of Costas, and the personal injuries sustained by Costas's daughter, Carol. It is then alleged that in consequence Atlantic Aviation was sued by the widow for the benefit of Carol and that Atlantic Aviation was "confronted with * * legitimate questions of fact with respect to its liability for consideration by a jury", and that in good faith on April 10, 1968, it entered into a *bona fide* settlement of the case which included a payment of $25,000 for the benefit of Carol Costas. It is then alleged that "as a result of settlement, the fault of Emanuel Costas and Atlantic Aviation was not determined." After alleging that the settlement was reasonable, it is then alleged that "all rights of action based on the aforementioned payments vested with the plaintiff." It is then alleged in four separate courts that, *first*, Costas was solely negligent and by reason of his negligence plaintiff was obligated to pay damages to Carol; *second*, that the crash and Carol's injuries resulted from the active primary negligence of Costas and it occasioned plaintiff's obligation to pay damages to Carol, Atlantic's own negligence, such as it was, being passive or secondary; *third*, the crash and Carol's injuries resulted from the reckless, wanton and gross negligence of Costas and such misconduct occasioned plaintiff's obligation to pay damages to Carol; and, *fourth*, that the negligence of Costas contributed to the accident and plaintiff was obligated to pay damages to Carol in consequence.

It is nowhere alleged that Carol ever sued her father or his estate, and it is nowhere distinctly indicated that at any point in the course of the two settlements did Atlantic Aviation either assert or release its claimover, if any, against the Costas estate. Defendant argues that the claim now made was a compulsory counterclaim, Rule 13(a), and that failure to assert it, coupled with the *res judicata* effect of the judicial settlement of the New Jersey case, bars its belated assertion by separate, later action. To the argument that it is too late for Atlantic to sue because the issue of

liability for loss and damage from the disaster as between the Costas Estate and Atlantic in the Porzio and McCabe action and in the Costas's action in New Jersey has been disposed of, Atlantic Aviation answers that a claim for indemnification does not accrue until a loss against which indemnification is sought has actually been sustained and, therefore, Atlantic's claim did not accrue until after the settlement had all been made, and more emphatically, that even if the claims for indemnification could have been anticipatorily advanced as a claimover in either or both of the two litigations, all three of the states the law of which might have applied (New York, New Jersey and Maryland) recognized the theory that a child could not sue her father in tort, and that the parental immunity from the child's tort action precluded a third-party wrongdoer's claimover for indemnification against the immune parent. *Cf.* Chamberlain v. McCleary, E.D.Tenn.1963, 217 F.Supp. 591 (Tennessee law); LaChance v. Service Trucking Co., Inc., D.Md.1963, 215 F. Supp. 162, 166 (contribution, not indemnity). The parental immunity no longer exists in New York and New Jersey. Hence, Atlantic Aviation asserts, it is now able for the first time to satisfy the Rule 13(a) requirement that the counter-claimant have a claim "at the time of serving the pleading". On either and on both grounds, argues Atlantic, it did not when it answered in the earlier actions have an opportunity to put forward its claim for indemnification against the Costas Estate.

■■■ The second branch of Atlantic Aviation's argument assumes that its right to claimover for indemnification depends upon Carol's having had the right and capacity to sue her father. That central proposition in plaintiff's argument has neither the validity nor the consequence that Atlantic ascribes to it. In logic the fact that Carol could not sue her father in tort but could sue Atlantic Aviation as a tort-feasor also (jointly or concurrently) at fault does not have the consequence that Atlantic

Aviation would be impotent to claimover against Carol's father. Every claim for indemnification rests upon the existence of a duty of conduct owed by the alleged indemnitor to the claimant-indemnitee which is, at least allegedly, ripe for litigation. The curious and troublesome law of contribution between tort-feasors both of whom are responsible for the same harm is governed by different principles (See Prosser, Law of Torts, 3rd Ed. 1964, 276, 278); the right to claim contribution flows from the fact that the payor has paid—been required to pay—the debt of another; it has for the most part taken legislative action to free such a payor from the defense that his tortious misconduct should as a matter of common law policy bar him from recovering what he paid—and not as a volunteer—to the use of the other tortfeasor. The claimant for complete indemnity, quite differently, proceeds on contract or implied contract, or on a comparative analysis of the contributions of conduct and status or relationship that the claimed indemnitor and indemnitee bring to the damage causing episode. If the analysis of the contract or status or conduct-relation of indemnitor and indemnitee establishes that the indemnitor is the one ultimately responsible for the damage arising out of the episode it is because, however difficult it may be to give it a precise expression in familiar legal categories, the indemnitor is in breach or at fault toward the indemnitee. In that analysis of indemnitor-indemnitee responsibilities *inter sese* the quantum of damages, the identity of the damage claimants, and their right to sue the indemnitor directly are not genuinely relevant.

Injured employees covered by Workmen's Compensation may sue third-party wrongdoers who thereupon implead the employer on a prayer for indemnification based upon active-passive negligence concepts, express indemnification, or breach of warranty of workmanlike service. The immunity of the employer from suit at the instance of his employee does not bar the alleged indemnitee's

claimover against the employer because the claimed indemnitee does not sue in the right of the employee (as Atlantic here does not sue in the right of Carol Costas) but in its own right as one to whom a duty was owed and breached by the third-party defendant. So Atlantic's claim is not that, having paid Carol Costas it can sue her father's estate for the tort her father committed toward her. Its claim is that Emanuel Costas owed it a duty of workmanlike maintenance and management of the aircraft which Costas breached either because he was negligent or wantonly negligent or qualitatively more negligent than Atlantic. *Cf.* Ryan Stevedoring Company, Inc. v. Pan-Atlantic S. S. Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133; Crumady v. Joachim Hendrik Fisser, 1959, 358 U.S. 423, 428–429, 79 S.Ct. 445, 3 L.Ed.2d 413. Note: Halcyon Lines v. Haenn Ship. C. & R. Corp., 1952, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318; Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 411–412, 74 S.Ct. 202, 98 L.Ed. 143; Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 1964, 376 U.S. 315, 318–321, 84 S.Ct. 748, 11 L.Ed.2d 732. See Prosser, Law of Torts, 3rd Ed.1964, 890, 891. There was little reason to believe that New York would pursue the dubious parent-child immunity (Prosser, *supra* 885–891) to the point of barring an alleged joint or concurrent tortfeasor's claimover for indemnity against an alleged primary wrongdoer. It could be argued that it had already rejected that concept in Schubert v. August Schubert Wagon Co., 1928, 249 N.Y. 253, 257–258, 164 N.E. 42.

■ While it is not indispenable to the determination of the present motion, it is unlikely in the extreme that Atlantic had a valid claim for indemnification against the Costas Estate. Any liability imposed on Atlantic would have rested upon a charge of negligence that was active in the sense of consisting in a failure adequately to perform the repair, inspection and servicing operation which it undertook in October 1962. Its liability would not rest upon any responsibility imposed by operation of law as is, for example, the liability of the owner of a motor vehicle negligently operated in his absence by a normally careful operator. The plaintiff's negligence would not differ in kind or in character from the negligence of Costas himself. Something more than a greater degree of negligence is required to impose a duty of indemnification on the basis of primary and secondary, or active and passive, or comparative negligences. See Jackson v. Associated Dry Goods Corp., 1963, 13 N.Y.2d 112, 242 N.Y.S.2d 210, 192 N.E. 2d 167; Bush Terminal Buildings v. Luckenbach Steamship Co., 1961, 9 N.Y. 2d 426, 214 N.Y.S.2d 428, 174 N.E.2d 516; Caruloff v. Emerson Radio & Phonograph Corp., 2d Cir. 1971, 445 F.2d 873; Ingham v. Eastern Airlines, Inc., 2d Cir. 1967, 373 F.2d 227, 239–240; United Airlines, Inc. v. Wiener, 9th Cir.1964, 335 F.2d 379, 398–402; State Mutual Life Assurance Co. of America v. Peat Marwick Mitchell & Co., S.D.N.Y.1969, 49 F.R.D. 202, 211–212; Prosser, Law of Torts, 3rd Ed.1964, 278–281.

■■ Plaintiff argues that its claim of indemnity could not arise until the payments had been made. Broadly, an indemnitor owes nothing until his indemnitee has suffered the loss from which the indemnitor has undertaken to save him harmless, but that abstract substantive principle has little room to operate in the litigable situations here presented in which the indemnification claim could have been asserted both in the New York action of Porzio and McCabe and in the New Jersey action commenced by the widow, Josephine Costas on her own behalf and that of her children. See, e. g., General Dynamics Corp. v. Adams, 5th Cir. 1965, 340 F.2d 271; Huggins v. Graves, 6th Cir. 1964, 337 F. 2d 486. The unfortunate decision in Stahl v. Ohio River Co., 3rd Cir. 1970, 424 F.2d 52 (contrast King v. State Farm Mutual Ins. Co., W.D.Ark.1967, 274 F.Supp. 824) might suggest that there cannot be an assertion of a claimover for contribution (or, impliedly, for indemnification) against a person who is

already a party to the action; in that case the court held that there could not be a Rule 13(a) counterclaim for contribution by a third party defendant directly against one of three plaintiffs, and indicated that a counterclaim could only be based upon an already matured claim. The reading of Rules 13 and 14 is almost perversely narrow. Contrast: Rule 18(b). Surely Rule 14(a) must be read as meaning essentially that even if one against whom a defending party has a claimover is not a party to the action the claimover may be presented by the simple expedient of bringing the third party defendant into the case. It is uselessly mischievous to read into Rule 14(a) the negative implication that if the prospective "third party defendant" is already in the case, as the party plaintiff or otherwise, the "third party plaintiff's claim" against the "third party defendant" may not be presented in and by the type of pleading—the plain counterclaim—that would normally be served between the parties. In the case of a defendant's "third party plaintiff" claim against a plaintiff, the apt pleading is the counterclaim; in the case of a defendant having a claimover for indemnification against another defendant, a claim that the co-defendant is or may be liable for all or part of the claim asserted in the action against him is made by the pleading usual among defendants, the cross claim, and Rule 13(g) expressly so provides. Hence, in the New York action Atlantic Aviation manifestly could cross claim for indemnification against the Costas Estate, and in the New Jersey action Atlantic Aviation could either counterclaim against the Costas Estate for indemnification, or, in anticipation of *Stahl*, pursue some sort of severance and claim procedure against the Costas Estate (see 424 F.2d at 55) not excluding, possibly, simply filing a Rule 14(a) claimover against the Estate and issuing a summons against it on the theory that, insofar as concerned the claimover, the Costas Estate was not yet a party and would have to be brought in to answer it. Rule 14(a), like Rule 13

(g), treats the claimover for indemnification as a pleadable, litigable claim; for procedural purposes a claim for indemnification is ripe for adjudication; it may be tendered in a pending action in which the primary liability is being adjudicated.

■ The claimover for indemnification was not, therefore, the kind of claim that was under discussion in Lawlor v. National Screen Service Corp., 1955, 349 U.S. 322, 327–238, 75 S.Ct. 865, 99 L.Ed. 1122. On the contrary, within the precise language of Rule 13(a), it was a litigable claim which, at the time of the serving of the pleading, the pleader had against an opposing party, it arose out of the transaction or occurrence that was the subject matter of the opposing party's claim, and it did not require for its adjudication the presence of third parties over whom the court could not acquire jurisdiction. In other words, here, and generally, a claimover is, if it exists in behalf of a primary defendant against the plaintiff, precisely within the definition of a counterclaim, and it is a presently litigable claim. The result in Weber v. Weber, E.D.Pa.1968, 44 F.R.D. 227, is essentially that which would have flowed from Atlantic Aviation's filing a counterclaim or claimover against the Costas estate in the New Jersey action.

To the argument that the claim was not ripe for adjudication, which is without substance, the additional argument that Chosney v. Konkus, Essex Co. Court 1960, 64 N.J.Super. 328, 165 A.2d 870, stood as an apparent bar, is hardly much help. *Chosney* dealt with contribution and not with indemnification, and, in the federal court, in light of La Chance v. Service Trucking Co., Inc., D.Md.1963, 215 F.Supp. 162, 166, Atlantic Aviation was not necessarily confined to the Law of New Jersey. Moreover, the present plaintiff was free to contest the continuing validity of the family immunity doctrine. The plaintiff does not claim a supervening change in law by legislation; (cf. Illinois Central R.R. v. Braswell Industries, Inc., W.D.La.1964, 227 F. Supp. 347, 354); the doctrine of intra-

family immunity had long been under fire, great breaches had been made in it, and Atlantic Aviation was as competent and sympathetically situated as any other litigant to challenge its continuing validity. Atlantic's election not to challenge the doctrine cannot give Atlantic a belated right to resurrect its claim from the old direct litigation with the Costas Estate when other litigants, no better situated for the endeavor than Atlantic was, have in the meanwhile challenged the doctrine.

Finally it is apparent from the facts that plaintiff's analysis is inadequate to the present situation. In the settlement of the New Jersey case Atlantic paid $10,000 to the widow of Emanuel Costas and to his younger children on the basis that Atlantic Aviation was, on balance, liable to the decedent in tort, for the only right by which the widow and the younger children could claim was the right of their late husband and father to have himself sued Atlantic Aviation for its negligence, relying on his own freedom from contributory negligence. Similarly in the New York action the only possible basis on which Atlantic Aviation could have shared in the settlement was on the theory that it had no claimover against the Costas Estate (and intra-family immunity was not involved in the New York case) but on the contrary had an exposure to liability to the plaintiffs in that case which it could not pass on to Costas Estate. The footing on which both settlements were made pre-supposed an exposure on the part of Atlantic Aviation which it was prepared to compromise and the absence of any claimover against the Costas Estate.

■ Whether or not the indemnification claim of Atlantic Aviation was a compulsory counterclaim in the New York action and in the New Jersey action, it was a compulsory offsetting claim in the settlement discussions in both cases. In the absence of an express reservation of the indemnification claim it could not survive the terms of those settlements notwithstanding that there was no explicit release of it. In the absence of an express reservation both settlements moved forward on the assumption that money was due from Atlantic Aviation to Carol, her mother and her siblings by reason of an ante-mortem claim that Emanuel Costas had against Atlantic Aviation. The inner sense, the necessary meaning of the settlement was that Atlantic Aviation was paying money that was due over and above all counterclaims and set-offs which it might have advanced against its co-party Costas Estate. There could have been no settlement on the terms agreed to in either case if Atlantic Aviation had the right (or the inchoate right accruing as a mature right when it paid over its $35,000) to claim $25,000 back from the Estate of Costas.

If Atlantic Aviation harbored the thought that any claim for indemnification would be worthless, that did not signify that the claim was non-existent. The claim could call to its support Schubert v. August Schubert Wagon Co., 1928, 249 N.Y. 253, 257–258, 164 N.E. 42, and the powerful dissent of Chief Judge Fuld in Badigian v. Badigian, 1961, 9 N.Y.2d 472, 215 N.Y.S.2d 35, 174 N.E.2d 718. That the claim was a difficult one and might not have had much settlement value, nor any prospect of figuring largely in the discussions once it was determined to settle and not to contest, is beside the point. It was an existing claim, and it could not survive a settlement in which, in essential substance, Atlantic Aviation paid money over which it would not have paid over, and could not in logic have paid over, had its claim for indemnification had content and substance. It simply cannot unwind history and recapture its past.

In the light of the foregoing it is accordingly

Ordered that the defendants' motion for summary judgment is granted and the clerk is directed to enter judgment that plaintiff take nothing and that the action is dismissed on the merits.