Berta H. GOLDRING, in her own right and as Executrix of the Estate of Abraham L. Goldring, Deceased, Plaintiff,

v.

ASHLAND OIL & REFINING COMPANY et al., Defendants.

Civ. A. No. 68-6-C.

United States District Court,
N. D. West Virginia.

June 15, 1973.

Snyder & Hassig, Sistersville, W. Va., J. S. Francis, New Martinsville, W. Va., for plaintiff.

Schmidt, Laas, Schrader & Miller, Wheeling, W. Va., for Ashland Oil and Refining Co.

Howard Caplan, McReynolds & Caplan, Clarksburg, W. Va., for Honeywell, Inc.

Herbert G. Underwood, Steptoe & Johnson, Clarksburg, W. Va., for Empire Stove Co.

MAXWELL, Chief Judge.

This action springs from the alleged explosion of a gas furnace in the Tyler County, West Virginia, home of Berta H. and Abraham L. Goldring on April 26, 1966. Mr. Goldring apparently died in May, 1966, and Mrs. Goldring filed this action on her own behalf and as her husband's executrix against Empire Stove Company, the manufacturer of the furnace; Honeywell, Inc., the manufacturer of the furnace's control valve; and Ashland Oil & Refining Company, the party which sold the furnace to the Goldrings and installed it.

The complaint, sounding in tort and warranty, charges Empire with neglect in assembling the furnace, Honeywell with marketing a defective control valve and Ashland with failure to inspect and install the furnace properly. Recovery is sought for (a) wreckage to the Goldrings' dwelling, (b) damages to the Goldrings' personal property, (c) wrongful death of Mr. Goldring, and (d) medical and funeral expenses incurred for Mr. Goldring.

In a cross-claim filed against Ashland, Empire asserts that if it is called upon to pay any damages to plaintiff, then Ashland, is liable to Empire, because any damage incurred by the Goldrings was due to the "affirmative or active negligence" of Ashland in improperly installing and maintaining the furnace.[1]

Ashland moves to dismiss Empire's cross-claim against it, urging that the cross-claim does not state a cause of action because it simply asserts the defense that Empire is blameless and raises no issue between Empire and Ashland. Thus, according to Ashland, Empire does not state a claim for tort indemnity or contribution; and even if a claim for contribution were properly articulated, under West Virginia law the claim would not accrue until a joint judgment for tort liability has been ren-

---

1. Empire has also filed a cross-claim against Honeywell. In turn, Honeywell has cross-claimed against Empire and Ashland; and Ashland has cross-claimed against Empire and Honeywell.

dered against Empire and Ashland (*see* W.Va.Code § 55–7–13).

Empire readily concedes that it is not asserting a claim for contribution. The Court must therefore determine whether the right of indemnity between tortfeasors exists under the substantive law of West Virginia, whether Empire actually states a claim for indemnity against Ashland, and whether such a claim is presently ripe for assertion under Rule 13(g), F.R.Civ.P.

Tort indemnity was explained by Judge Craven in Wallenius Bremen G. m. b. H. v. United States, 409 F.2d 994, 998 (4th Cir. 1969), cert. denied, 398 U. S. 958, 90 S.Ct. 2164, 26 L.Ed.2d 542 (1970):

> "[I]ndemnity in the law of torts is, of course, the name given to the determination of primary and secondary liability. Unlike contribution, indemnity is the shifting of the entire loss to another who ought to bear it because (a) he expressly or impliedly agreed to do so, or (b) his fault is 'primary' and relatively more grievous, and the other's fault is 'passive' or 'constructive', or 'vicarious' or 'insulated'. Prosser, Torts § 48 (Hornbook Series 3rd ed. 1964.) Contract aside, indemnity may be allowed only if the person from whom indemnity is sought . . . owed a *duty* of his own to the injured person. The duty owed by the one sought to be made indemnitor must be 'primary': its violation must be more grievous than the breach of duty of the indemnitee." (Emphasis in original.)

*See also* Jennings v. United States, 374 F.2d 983, 987 n. 7 (4th Cir. 1967).[2]

■ Apparently the West Virginia Supreme Court has not dealt with indemnity claims between tortfeasors where no contract of indemnity existed.

However, this Court believes that if the West Virginia Supreme Court were called upon to decide the issue, it would hold that the common law right of indemnity between tortfeasors may be asserted in West Virginia. This view is supported by Leek v. Baltimore & O. R. Co., 200 F.Supp. 368 (N.D.W.Va. 1962), a devision necessarily bottomed on the premise that there can be indemnity between tortfeasors in West Virginia.

In *Leek*, two B. & O. employees, in separate actions, had sued both the B. & O. and a Moundsville, West Virginia, cab company for injuries sustained when a cab hired by the B. & O. wrecked on West Virginia Route 2 while returning the employees to the railroad's yards at the end of a work day. The B. & O. was sued under the Federal Employers' Liability Act (45 U.S.C. § 51 et seq.); both the B. & O. and the cab company were charged with negligence. The pleadings show that the railroad cross-claimed in each case, seeking common law tort indemnity from the cab company. The two cases were consolidated for trial, and verdicts were returned for both plaintiffs against both defendants. However, "the issue of primary-secondary liability as between the two defendants" was, by stipulation, "reserved from submission to the jury." The Court found "that the active or primary negligence is that of the Cab Company, and that the Railroad is secondarily liable only because of the provisions of the Federal Employers' Liability Act." In upholding the railroad's indemnity claim, the Court ordered that the railroad "shall have judgment over against [the cab company] for any portion of the judgments which it may be required to pay." (200 F.Supp. at 371–372).

The Uniform Commercial Code, adopted by the West Virginia Legislature in

---

2. Contribution is defined as "the remedy securing the right of one who has discharged more than his fair share of a common liability or burden to recover from another who is also liable the proportionate share which the other should pay or bear." 18 Am.Jur.2d, Contribution § 1 n. 4 (1965).

1963, embraces the indemnity claim concept, a concept particularly suited to products liability cases. The U.C.C. acknowledges that one person in the chain of distribution may be "answerable over" to another person in the chain who is "sued for breach of a warranty or other obligation." W.Va.Code § 46–2–607(5); *see also* W.Va.Code § 46–3–803.

The West Virginia Supreme Court of Appeals has promulgated and adopted a procedural rule for cross-claiming against co-parties which is identical to Rule 13(g), F.R.Civ.P. The rule specifically allows one party to cross-claim against a co-party who "is or may be liable to the cross-claimant for all or part of the claim asserted in the action against the cross-claimant." W.Va.R. Civ.P. 13(g). The rule is especially geared to facilitate the assertion of claims over, such as for indemnity and subrogation.

This Court believes that *Leek* correctly recognized that claim for tort indemnity, as it would be logical for the West Virginia Supreme Court to sanction such claim since that court has already provided the mechanism—Rule 13(g)—for the easy assertion of a demand for indemnity, and since the U.C.C., now part of West Virginia's statutory law, recognizes the indemnity concept (*see* W.Va.Code §§ 46–2–607(5), 46–3–803).

■ Ashland relies on Washington Building Rlty. Corp. v. Peoples Drug Stores, Inc., 82 U.S.App.D.C. 119, 161 F.2d 879 (1947), to argue that Empire's cross-claim against it fails to state a cause of action because Empire, like the plaintiff in *Washington Building*, alleges "only facts that constitute . . . a complete defense to the original . . . action, and nothing constituting a claim against" Ashland, *Id.* at 880. However, a reading of the cross-claim reveals that Empire is asserting a plea for affirmative relief against Ashland. Empire alleges that any damages incurred by the Goldrings was due to the "affirmative or active negligence" of Ashland in failing "to properly install and properly maintain [the] gas furnace" and that by reason of such negligence Empire is entitled to recover from Ashland any judgment awarded plaintiff against Empire. These allegations properly state a claim for indemnity.

■ The final question is whether Empire's indemnity cross-claim is ripe for assertion under Rule 13(g), F.R. Civ.P., which provides:

"Cross-Claim Against Co-Party. A pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter . . . of the original action. . . . Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant."

Empire's indemnity claim may be set forth at this stage. As Judge Dooling said in Atlantic Aviation Corp. v. Estate of Costas, 332 F.Supp. 1002, 1007 (E.D. N.Y.1971):

"Rule 13(g) treats the claimover for indemnification as a pleadable, litigable claim; for procedural purposes a claim for indemnification is ripe for adjudication; it may be tendered in a pending action in which the primary liability is being adjudicated."

Moreover, by allowing Empire's cross-claim to stand, we keep intact the framework for litigating the entire subject matter of the alleged gas furnace explosion, thereby avoiding needless multiplicity of actions.[3]

---

3. Baltimore & O. R. Co. v. Saunders, 159 F.2d 481 (4th Cir. 1947), cited by Ashland, does not prevent Empire from cross-claiming for indemnity against Ashland.

*Saunders,* in an alternative holding, indicates that the original defendant in an unresolved tort action cannot utilize Rule 14(a) to implead a joint tortfeasor since,

Accordingly, it is ordered that Ashland's motion to dismiss Empire's cross-claim against it be, and the same hereby is, denied; and it is further

Ordered that Ashland serve and file its answer to Empire's cross-claim within 10 days after notice of this memorandum order.

under West Virginia law, the defendant has no claim for contribution in the absence of a joint judgment. However, indemnity is quite a different matter, and the Fourth Circuit expressly limited *Saunders* in Ford Motor Co. v. Milby, 210 F.2d 137 (4th Cir. 1954), a case approving third-party complaints for tort indemnity under Rule 14(a): Ford sought to implead its distributor and ask recovery over for any judgment which might be obtained against Ford because of its distributor's negligence. The Fourth Circuit permitted impleader "since what is sought here is not [the *Saunders*-like attempt] to bring in as a third party defendant a joint tort-feasor alleged to be liable to plaintiff along with defendant, and thus require plaintiff to sue one whom plaintiff in bringing the action has elected not to sue, but to bring in one alleged to be liable to defendant for any recovery that plaintiff may obtain against the defendant." (Id. at 138). *See generally,* 3 J. Moore, Federal Practice, ¶ 14.11, at 574 & n. 20 (2d ed. 1972); 6 Wright & Miller, Federal Practice and Procedure: Civil § 1448, at 266–67 (1971). If a claim for tort indemnity may be asserted by impleading a new party under Rule 14(a), the claim is even more suitable for assertion under Rule 13(g) in cases such as this one where Ashland, the purported indemnitor, is already present as a defendant by option of the plaintiff, Mrs. Goldring. See Atlantic Aviation Corp. v. Estate of Costas, *supra,* 332 F.Supp. at 1007.