**FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, Plaintiff,**

v.

**Frank E. WILLIAMS, Jr., et al., Defendants.**

**Civ. No. Y–83–1422.**

United States District Court, D. Maryland.

Dec. 5, 1984.

Henry R. Lord, Neil J. Dilloff, Jonathan D. Smith, and David H. Bamberger, Baltimore, Md., for plaintiff.

Richard K. Willard, Washington, D.C., J. Frederick Motz, Baltimore, Md., Jeffrey Axelrad, Washington, D.C., Nikki Calvano Maliha, Washington, D.C., for the United States of America, counterclaim defendant.

Benjamin R. Civiletti, Washington, D.C., John Henry Lewin, Jr., Paul F. Strain, Charles M. Kerr, and James L. Shea, Baltimore, Md., for defendants Frank E. Williams, Jr., Seymour S. Abensohn, E. Fulton Brylawski, W. Evans Buchanan, Glen J. Loepenick, Jr., John C. Kelly, Robert K. Maddox, and Henry H. Semmes, Jr.

Kevin J. McCarthy, Upper Marlboro, Md., for defendant Abe Pollin.

Robert L. Flanagan, Baltimore, Md., for defendant Leolla L.J. Fisher.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

### I. BACKGROUND

This case concerns alleged misconduct on the part of certain directors, employees, and officers of County Federal Savings and Loan Association ("County"). County, a federally chartered savings and loan association insured by the Federal Savings and Loan Insurance Corporation ("FSLIC"), ceased to exist on August 10, 1981, when it was merged into Metropolitan Federal Savings and Loan Association with approximately $21 million in FSLIC assistance. The merger resulted from County's insolvency and its inability to meet the financial requirements to stay in operation. As part of the merger, Metropolitan succeeded to all claims County had against its former directors, officers, and others.

On April 21, 1983, the FSLIC received an assignment of all such claims from Metropolitan and seven days later, brought this suit against certain former directors, officers, and employees of County for, among other things, intentional and negligent breach of fiduciary duty, fraud, waste, violation of various federal statutes and regulations, and diversion of corporate opportunities. In May, 1984, several of the defendants filed counterclaims against the FSLIC, the United States of America, and "John Doe, one or more unknown agents of the Federal Savings and Loan Insurance Corporation and/or the Federal Home Loan Bank Board."

motions have been filed and The following/require resolution at this time:

(1) Defendant Fisher's motion for partial summary judgment;

(2) FSLIC's motion to dismiss counterclaims filed by defendants;

(3) FSLIC's motion for partial summary judgment against defendant Pollin; and

(4) Defendant directors' motion for summary judgment on primary punitive damages

### II. DEFENDANT FISHER'S MOTION

Defendant Leolla Fisher has filed a motion for summary judgment and a supporting memorandum seeking the dismissal of claims involving two limited allegations made against her by the FSLIC in its amended complaint. The first allegation concerns Fisher's participation in a real estate appraisal and inspection business known as Real Property Associates ("RPA") while serving as an officer and employee of County.[1] The defendant argues in her motion that the plaintiff's claim based on this allegation is barred by the statute of limitations. The defendant also seeks the dismissal of a second cause of action which arises from an allegation that defendant Fisher charged excessive, unauthorized, and unreasonable expenses to County.[2] Arguing that this allegation is entirely without factual support and that the claim arising therefrom is also barred by the statute of limitations, defendant Fisher does not seek summary judgment on

---

1. Amended complaint, ¶ 14.

2. Amended complaint, ¶ 12.

any of the other claims pending against her.

### A. Fisher's Involvement with County

Defendant was employed by County and served in its loan department from February, 1971 through December, 1979.[3] She served as Vice-President and manager of County's construction loan department from 1977 until her resignation of September 20, 1979 became effective on or before January 31, 1980.[4] Plaintiff alleges that "Fisher's department was plagued with problems during her stewardship"[5] and that both the Federal Home Loan Bank Board ("FHLBB") and County's outside auditing firm of Hoye, Graves, Bailey, and Associates ("HGB") discovered and reported several improper practices in County's construction loan department. These alleged improprieties include: making disbursements to borrowers without completing adequate inspection reports to show that the disbursements were warranted, violations of FHLBB regulations, the underreporting of problem loans and other substantial assets to FHLBB, deducting interest and fees from undispursed loan funds rather than requiring the borrowers to pay those charges, taking charges into income when they had not been paid by the borrower, the lack of inspection reports to verify disbursements,[6] authorizing disbursements from borrowers for work that had not been done,[7] conflicts of interest because of Fisher's involvement with RPA,[8] accepting gifts from County borrowers and later making favorable recommendations on loan requests from those borrowers,[9] making false journal entries in County's loan records,[10] and receiving payments from County that are unsupported by the association's records or do not appear to be directly business related.[11] Finally, Fisher's resignation as Vice-President and Construction Loan Department Manager of County purportedly was submitted in response to an ultimatum from the board of directors that she either divest herself of any interest in RPA or resign from County Federal.

### B. Discussion

In her memorandum in support of the motion for partial summary judgment ("Defendant's Memorandum"), Fisher argues that any cause of action against her on account of her participation in RPA is barred by the statute of limitations because County knew that it had such a cause of action before April 28, 1980. In support of this contention, defendant cites the Maryland statute of limitations contained in § 5–101 of the Maryland Courts and Judicial Proceedings Article which provides that a "civil action at law shall be filed within three years from the date it accrues..." Defendant argues that under both Maryland and federal law, the cause of action accrues at the time the claimant knows or should reasonably know of the existence of its claim. Defendant then asserts that County knew about its alleged cause of action against her relating to her participation in RPA before April 20, 1980, and could have filed an action against her but elected not to do so; instead, County

---

3. Fisher's deposition, p. 35.

4. *Id.*, pp. 32–36.

5. Plaintiff's memorandum in opposition to defendant's motion for partial summary judgment, p. 3.

6. Plaintiff's memorandum in opposition to defendant's motion for partial summary judgment ("Plaintiff's Memorandum"), at 4, citing Ballenger deposition, pp. 169–175, 331–332, 488–489. Mr. Edward Ballenger was an outside auditor from the firm of Hoye, Graves, Bailey, and Associates.

7. Plaintiff's memorandum, at 5, citing Fisher deposition, pp. 331–332.

8. Plaintiff's memorandum, at 5–6, citing Fisher deposition, pp. 276, 285–286, 292–293, 295–299.

9. Plaintiff's memorandum, at 6, citing Fisher deposition, pp. 434–447.

10. Plaintiff's memorandum, at 6, citing FHLBB 1980 Examination Report, pp. 70, 80.

11. Plaintiff's memorandum, at 6, citing FHLBB 1979 Examination Report, p. 77, and Fisher deposition, p. 414.

chose to use its alleged cause of action against Fisher and others as a shield against their instituting litigation against the association. Defendant concludes that there is no basis for suspending the statute of limitations for any period because the members of County's Board of Directors had no interest in RPA nor was Fisher a member of the board of directors; thus, defendant insists that tolling the statute of limitations for the period in which the defendant directors controlled County's board is inappropriate as a matter of law.

Defendant Fisher also contends that there is no evidence in the record to establish a cause of action against her based on allegations of excessive, unauthorized, and unnecessary travel or other expenses. Moreover, defendant suggests that assuming *arguendo* that the plaintiff has shown some articulable basis for asserting such a claim, there is no basis in fact for the Court to conclude that County could not have filed suit against Fisher for the allegedly unreasonable expenditures in July, 1979, when the FHLBB Annual Report was submitted to County, and therefore, any such claim is barred by the statute of limitations for the same reasons the claims arising out of the defendant's involvement with RPA are time barred.

### 1. *Plaintiff's Claims Involving Real Property Associates and Excessive Expenditures are not barred by the Statute of Limitations*

The Court ruled on the limitations issue in this case when it denied defendant Pollin's motion for summary judgment, a motion very similar to the instant one. *FSLIC v. Williams,* Y-83–1422 (D.Md. May 1, 1984) (marginal order denying defendant Pollin's motion for summary judgment). Defendant Fisher's motion for summary judgment must also be denied as neither of the plaintiff's claims contested here are barred by the statute of limitations.

■ Since this action is one brought by an agency of the United States, *see Acron Investments, Inc. v. FSLIC,* 363 F.2d 236 (9th Cir.), *cert. denied,* 385 U.S. 970, 87

S.Ct. 506, 17 L.Ed.2d 434 (1966); 28 U.S.C. § 451; 12 U.S.C. § 1730(k)(1)(A), through assignment, the Court must analyze the limitations issue using a two step inquiry. First, the applicable state statute of limitations must be considered to determine whether it expired before the assignment. If the state statute did not expire by the date of the assignment it must then be determined whether the federal statute of limitations applicable to claims made by federal agencies expired by the date the instant suit was filed. *See Guaranty Trust Co. v. United States,* 304 U.S. 126, 141, 58 S.Ct. 785, 793, 82 L.Ed. 1224 (1938); *FDIC v. Bird,* 516 F.Supp. 647, 650 (D.P.R. 1981); *United States v. Cardinal,* 452 F.Supp. 542 (D.Vt.1978).

■ The pertinent Maryland statute of limitations requires that "a civil action at law be filed within three years from the date it accrues..." Md.Ann.Code Maryland Courts and Judicial Proceedings § 5–101 (1984). Under both Maryland and federal law, no cause of action accrues for the purposes of invoking the statute of limitations until a claimant (in this case County) knows or reasonably should know of the existence of its claim. *See Poffenberger v. Risser,* 290 Md. 631, 431 A.2d 677 (1981); 28 U.S.C. § 2416. Defendant suggests that County knew of the existence of its claims concerning RPA before April 28, 1980. To support this contention, defendant relies on a letter dated April 25, 1980, from Thomas Jackson, counsel for County, to defendant's attorney aprising him of County's claims against defendant Fisher and her RPA associates. However, the defendant has not shown beyond any doubt that County knew or reasonably should have known of these causes of action against the defendant on or before April 21, 1980 (the date of the assignment of Metropolitan's claims to the FSLIC). Because the evidence presented to the Court must be construed in favor of the party opposing the motion for summary judgment, with the benefit of all favorable inferences that can be drawn from it, Wright, Miller and Kane, 10A *Federal*

*Practice and Procedure: Civil 2d* § 2727 at 124–125 (1983), citing *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Cole v. Cole*, 633 F.2d 1083, 1090 (4th Cir.1980) (quoting Wright and Miller); *see United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), the Court may not assume that County knew or should have known of its causes of action against the defendant concerning her involvement in RPA before the letter informing the defendant of the existence of the potential claims against her was sent to her attorney by County's attorney. Moreover, the claims concerning RPA and the causes of action relating to the defendant's allegedly excessive and unauthorized expenditures did not accrue during the period in which County was controlled by allegedly culpable defendant directors. *See infra*, pp. 1193–1194. Consequently, these claims were not barred on the date of the assignment to the FSLIC. The federal statute of limitations applies from the date of the assignment until April 28, 1983, the date the current suit was filed. *See Guaranty Trust*, 304 U.S. at 141, 58 S.Ct. at 793; *FDIC v. Bird*, 516 F.Supp. at 650. The federal statute provides, in pertinent part:

(a) Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon *any contract, express or implied in law or fact, shall be barred unless the complaint is filed within six years*, after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later; (b) subject to the provisions of section 2416 of this title, and except as

otherwise provided by Congress, *every action for money damages brought by the United States or an officer or agency thereof which is founded upon a tort shall be barred unless the complaint is filed within three years after the right of action first accrues.* [emphasis added].

■ The period for bringing an action under this statute had not expired and extinguished the FSLIC's claims against defendant Fisher at the time this suit was instituted because of the existence of a tolling principle which postponed the date that the limitations period commenced. It is widely held that the limitations "statute is tolled while a corporate plaintiff continues under the domination of ... wrongdoers." 3A *Fletcher Cyclopedia Corporations*, § 1306.2 (1975). The causes of action against former directors and officers of an institution do not accrue while the culpable group of defendants retain control of the institution and the limitations statute does not begin to run against an officer who resigns if the remaining culpable directors and officers retain control after the officer's resignation. *See ITT v. Cornfeld*, 619 F.2d 909, 930–931 n. 24 (2d Cir.1980); *International Railways of Central American v. United Fruit Company*, 373 F.2d 408 (2d Cir.), *cert. denied*, 387 U.S. 921, 87 S.Ct. 2031, 18 L.Ed.2d 975 (1967); *Michelsen v. Penney*, 135 F.2d 409, 416 n. 2 (2d Cir.1943); *Payne v. Ostrus*, 50 F.2d 1039 (8th Cir.1931); *Hughes v. Reed*, 46 F.2d 435 (10th Cir.1931); *FDIC v. Bird*, 516 F.Supp. at 651–652; *Saylor v. Lindsay*, 302 F.Supp. 1174, 1184 (S.D.N.Y.1969); *Loughman v. Pitz*, 36 F.Supp. 302 (E.D.N.Y. 1941).

The better reasoned cases require the addition of a disinterested majority of non-culpable directors to cease the tolling of the statute of limitations.[12] *Compare, e.g.,*

---

12. The cases which hold that tolling continues while the culpable directors constitute a majority of the board recognize the practicalities of the situation. As long as the majority of the board of directors are culpable they may continue to operate the association and control it in an effort to prevent action from being taken

against them. While they retain control they can dominate the non-culpable directors and control the most likely sources of information and funding necessary to pursue the rights of the association. As a result, it may be extremely difficult, if not impossible, for the corpora-

*Allen v. Wilkerson,* 396 S.W.2d 493 (Tex. Civ.App.1965) (disinterested majority of directors necessary to terminate tolling) *with International Railways,* 373 F.2d 408 (2d Cir.1967) (addition of non-culpable directors sufficient to terminate tolling provided that new directors are able to discover wrongdoing and would be able to induce the corporation to sue). The rationale for this principle is that control of the association by culpable directors and officers precludes the possibility of filing suit because these individuals can hardly be expected to sue themselves or to "initiate any action contrary to their own interests." *FDIC v. Bird,* 516 F.Supp. at 552, quoting *First State Bank of Hudson County v. United States,* 599 F.2d 558, 563–64 (3d Cir.1979), *cert. denied,* 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642. Additionally, control of the association relates to the concealment of causes of action from those who otherwise might be able to protect the association.

The defendant urges that this Court should not apply these tolling principles in the instant case. Defendant Fisher argues that these principles should not be applied here because she was not a member of County's board of directors nor did any members of the board have any interest in RPA. However, even if true, her argument is legally unavailing and does not persuade this Court that the tolling principles discussed herein should not be applied.

Although Fisher was not a member of the board of directors of County, the facts and circumstances surrounding this case indicate that the suspension of the statute of limitations during the period in which the culpable defendants remained in control of County is particularly appropriate in light of the rationale behind the applicable tolling principles. As defendant Reeves' deposition [13] and Thomas Jackson's letter [14] to Fisher's counsel indicate, the allegedly culpable group of defendant directors and officers retained control of County after Fisher's departure and would not sue her for neglect and other improprieties associated with the operation of County, many of which they might be found guilty themselves. County's recognition of its claims against defendant Fisher in 1980 was an obvious attempt to prevent Fisher from airing the circumstances of the alleged mismanagement of County in a public forum.[15] If County had made claims against defendant Fisher for her neglect and breach of duties in 1980, she no doubt could have argued as a defense that County's losses were also caused or contributed to by Reeves and the defendant directors. Reeves and the directors would not risk dividing the culpable defendants by making claims against the Fisher defendants (those defendants having an interest in RPA) for breach of duties which also may have exposed them to liability for the same.

Additionally, County's causes of action against Fisher were not effectively discovered until after the allegedly culpable directors relinquished control of the association and therefore the accrual of these causes of action was postponed until that time. A cause of action does not accrue until it is known or can be discovered through the use of reasonable diligence, *Poffenberger v. Risser,* 290 Md. 631, 431 A.2d 677 (1981); 28 U.S.C. § 2416, by a non-culpable person with the authority to bring an action. Furthermore, the failure to use due diligence in discovering the claim may be excused where, as here, a

tion to discover and pursue its rights while the wrongdoers retain control.

**13.** Defendant Reeves was President of County and a member of its board of directors. Reeves testified in his deposition that he was just "blowing smoke" at defendant Fisher and her associates at RPA with his statement concerning County's possible claims against them. Reeves deposition, p. 545.

**14.** Thomas Penfield Jackson, counsel for County, wrote to Benny L. Kass, counsel for defendants Heup, Fisher, and O'Halloran, on April 25, 1980, and informed him of County's potential claims against his clients. However, Jackson also explicitly indicated that County would not pursue those claims unless litigation was instituted against it by the Fisher defendants.

**15.** *See* Reeves deposition, pp. 544–45.

fiduciary duty exists between defendant Fisher and County. *See Merchants Mortgage Company v. Lubow,* 275 Md. 208, 339 A.2d 664 (1975).

This legal principle is related to the tolling principles discussed previously. County could not effectively discover its causes of action against Fisher while the allegedly culpable directors retained control of the association and possessed the knowledge that would result in County's discovery of its claims against them. In *FDIC v. Bird, supra,* at 647, the FDIC received an assignment of claims against the former directors and *officers* of an insolvent bank and filed suit to pursue those claims. Certain of the defendants filed a motion to dismiss the complaint on limitations grounds but the court denied the motion and reasoned that "in no meaningful sense can it be said that the claims could have been sued upon prior to the bank's failure and the appointment of a receiver ... [given] the domination of [the bank's] board of directors and management by [the culpable defendants]." *Id.* at 651. Here, the association's claims against the Fisher group were not, and could not have been, discovered by persons at County in a position to pursue them before the appointment of a disinterested director in October, 1980. More realistically, these claims were not effectively discovered until after the FSLIC engineered County's merger with Metropolitan in August, 1981.

 This Court is persuaded that the better rule of law provides for the tolling of the statute of limitations, *Allen,* 396 S.W.2d at 493, and the postponement of the accrual of a cause of action until after the culpable defendants have relinquished control of the institution, *Michelsen v. Penney,* 135 F.2d 409 (2d Cir.1943); *Adams v. Clarke,* 22 F.2d 957, 959 (9th Cir.1927); *FDIC v. Bird,* 516 F.Supp. at 651, control is persumed where such directors constitute a majority of the board. However, the instant action was filed in a timely manner regardless of the approach adopted by this Court to determine when the tolling of the

limitations statute ceased. No new independent directors were added to County's board until October of 1980. The allegedly culpable directors retained unanimous control of County until that time and enjoyed an overwhelming majority on the board until the August, 1981 merger with Metropolitan. This suit was filed well within the three and six year limits even if the earlier date to mark the end of the tolling period is used.

Thus, the plaintiff's claims involving RPA are not barred by either the Maryland or federal statute of limitations and defendant's motion for summary judgment based thereon is accordingly denied. For the same reasons, plaintiff's claims against Fisher involving excessive and unauthorized expenditures are not barred by the statute of limitations.

*2. There are Sufficient Facts In The Record to Support Plaintiff's Claims Involving Excessive and Unauthorized Claims*

In her motion and memorandum, defendant Fisher argues that the FSLIC has failed to present evidence establishing a cause of action against her based upon its allegations of "excessive, unauthorized, and unnecessary travel or other expenses." [16] This contention is clearly erroneous. Defendant appears to assert that these expenses were reasonable, authorized, and business related. This assertion is contradicted by the 1979 FHLBB Examination Report, verified by the Chapman affidavit which states that "[a] number of the payments are either unsupported by the association's records or do not appear to be directly business related." [17] Defendant Fisher's assertion is also contradicted by her deposition testimony in which she admitted that she charged meals at which she discussed RPA business to County.

 A motion for summary judgment may not be granted if there is a genuine issue of material fact. *See* Wright, Miller,

---

**16.** Defendant's Memorandum, p. 8.

**17.** Chapman affidavit, p. 77.

and Kane, 10 *Federal Practice and Procedure: Civil 2d* § 2712, at 574 (1983). It is improper for this Court to decide the applicability of a legal rule on a motion for summary judgment if the materials before the Court raise a genuine issue as to ultimate facts material to the applicability of the legal rule. *United States v. Diebold,* 369 U.S. at 655, 82 S.Ct. 994. Summary judgment is not a substitute for the trial of disputed factual issues, Wright, Miller, and Kane, 10 *Federal Practice and Procedure: Civil 2d* § 2712 at 574 (1983), citing *Richard Colgin Co. v. Diamond Crystal Salt Co.,* 32 F.R.D. 44, 45–46 (D.N.C.1963), and any inferences to be drawn from the facts contained in the record must be viewed in a light most favorable to the party opposing the motion for summary judgment. *United States v. Diebold,* 369 U.S. at 655, 82 S.Ct. 994. *See Adickes,* 398 U.S. at 144, 90 S.Ct. at 1598; *Cole,* 633 F.2d at 1090. Even where the facts in evidence are undisputed, summary judgment is inappropriate where the evidence is such that conflicting inferences may permissibly be drawn therefrom. *United States v. Diebold,* 369 U.S. at 655, 82 S.Ct. 994; *Phoenix Savings and Loan v. Aetna Casualty and Surety Company,* 381 F.2d 245, 249 (4th Cir.1967); *Batchelor v. Legg,* 55 F.R.D. 557, 561 (D.Md.1972).

█ In light of these well established principles, the decision as to the reasonableness and appropriateness of expenses Fisher charged to County while it was in serious financial difficulty is one to be decided by the trier of fact at trial and not by the Court on a motion for summary judgment. Accordingly, defendant Fisher's motion for partial summary judgment on the excessive expenditure claim is denied.

### III. THE FSLIC'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS

#### A. *Defendants' Counterclaim Against the United States*

Generally, the defendants allege in their counterclaims against the United States that the losses and damages suffered by County were caused or at least significantly contributed to by the culpably wrongful conduct of federal agents and that these federal agents and ultimately the United States should bear the responsibility of liability. The wrongful conduct they allege includes assertions that federal agents, in 1971–75, harassed County with unwarranted and unnecessary investigations and examinations, pursued sanctions against individuals associated with County, encouraged media attention concerning County which resulted in the demoralization of County employees, and by 1979, had forced County out of business. Moreover, the defendants allege that these federal agents delayed in arranging a merger of County with Metropolitan, finally forcing unfavorable merger terms in August of 1981.

More specifically, the allegations in the defendant directors' counterclaim are as follows:

(1) Count I states that the federal agents breached their duty to advise and to assist County in conducting its operations.

(2) Count II states that the federal agents intentionally and improperly interfered with County's actual and potential contractual relationships by conducting wrongful examinations and by fraudulently inducing County directors to allow a supervisory merger with Metropolitan.

(3) Count III states that the federal agents breached their duty to preserve the confidentiality of County's business by disclosing internal matters to the media.

(4) Count IV states that the federal agents negligently operated County from February, 1981 until the merger with Metropolitan in August, 1981, that the government exceeded its regulatory role in assuming substantial control of County and, therefore, that the government had a duty to exercise reasonable care in the operation of the association.

(5) Count V states that the federal agents falsely represented to County that the merger could be completed expeditiously.

(6) Count VI states that, in combination with others, the federal agents conspired to interfere with County's business, and to convert County's asserts.

(7) Counts VII and VIII assert that the federal agents violated the constitutional protections of due process and equal protection.

*1. The United States has not Waived its Immunity and thus a Counterclaim for Damages may not be Maintained*

■ It is a well settled principle of law that the United States, as sovereign, is immune from suit except where it has consented to be sued. *United States v. Mitchell*, 463 U.S. 206, 209, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983); *Food Town Stores, Inc. v. Equal Opportunity Commission*, 708 F.2d 920 (4th Cir.1983). Moreover, the United States may define the terms and conditions upon which it may be sued. *United States v. Kubrick*, 444 U.S. 110, 117–18, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979).

■ The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680, the statute upon which this Court's jurisdiction over the United States in this action is predicated, effectively waives the sovereign immunity of the United States in civil actions involving tort claims.[18] This waiver of sovereign immunity is, however, subject to certain ennumerated jurisdictional prerequisites and statutory exceptions. These exceptions in 28 U.S.C. § 2680 limit the

waiver of sovereign immunity set forth in 28 U.S.C. § 1346(b).

*a. The Claim Involving Discretionary Acts Allegedly Performed by the United States is Barred by the Discretionary Function Exception to the FTCA*

The discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), provides that:

[T]he provisions of this chapter and § 1346(b) of this title shall not apply to—

(a) Any claims based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a Federal Agency or an employee of the Government, whether or not the discretion involved be abused.

This subsection excludes claims based on the execution of a discretionary function by a federal agency, whether or not the discretion is abused. *Dalehite v. United States*, 346 U.S. 15, 33, 73 S.Ct. 956, 966, 97 L.Ed. 1427 (1953). Where the discretionary function exception to the FSLIC applies, the Court lacks subject matter jurisdiction over the action. *See id.* at 18, 24, 73 S.Ct. at 959, 962. This exception insulates the government from liability, in tort, for errors made in its administrative, regulatory, or quasi-legislative (rulemaking) capacity. Thus, regulatory acts undertaken by the United States and policy determinations, decisions, and conduct of administrators, requiring the exercise of judgment, are exempted from coverage by the FTCA as

---

**18.** 28 U.S.C. § 1346(b) provides as follows:

[S]ubject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court of the District of the Canal Zone and the District of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

discretionary functions. *Id.* at 35–36, 73 S.Ct. 967–68.

The legislative history of 28 U.S.C. § 2680 indicates that Congress intended to carve out an area of tort liability to which it was unwilling to subject the government. The clearly expressed purpose of § 2680(a) is to exclude claims based upon the regulatory activities of the federal government. *See In re Franklin National Bank Securities Litigation,* 478 F.Supp. 210 (E.D.N.Y.1979). The legislative history of 28 U.S.C. § 2680 reveals that:

> The first subsection … exempts from the bill claims based upon the performance or nonperformance of discretionary functions or duties on the part of a Federal agency or Government employee, whether or not the discretion involved be abused, …. This is a highly important exception, intended to preclude any possibility that the bill might be construed to authorize suit for damages against the Government growing out of an authorized activity …. It is also designed to preclude application of the bill to a claim against a regulatory agency, … based upon an alleged abuse of discretionary authority by an officer or employee, whether or not negligence is alleged to have been involved.

H.R.Rept. No. 2245, 77th Cong., 2nd Session, 10 (1942).

Consistent with the intent of Congress in excluding claims based on federal regulatory activities similar to those involved in the instant case, federal courts have repeatedly upheld the discretionary function exception as a bar to tort suits seeking to impose liability for the decisions of federal agents who have used their judgment in exercising, or refraining from exercising, their statutory and regulatory power. *E.g., Lynch v. United States Department of Army Corps of Engineers,* 474 F.Supp. 545 (D.Md.1978); *Bernitsky v. United States,* 620 F.2d 948 (3d Cir.1980), *cert. denied,* 449 U.S. 870, 101 S.Ct. 208, 66

L.Ed.2d 90 (1981); *Barton v. United States,* 609 F.2d 977 (10th Cir.1979); *Huntington Towers, Ltd. v. Franklin National Bank,* 559 F.2d 863 (2d Cir.1977), *cert. denied,* 434 U.S. 1012, 98 S.Ct. 726, 54 L.Ed.2d 756 (1978).

While the Supreme Court did not define precisely the parameters of the discretionary function exception in *Dalehite v. United States,* 346 U.S. at 15, 73 S.Ct. at 956, it did state that:

> … 'the discretionary function or duty' that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications, or schedules of operations. Where there is room for policy judgment and decision there is discretion. (emphasis added)

*Id.* at 35–36, 73 S.Ct. at 967–68.

In *United States v. Empresa De Viacao,* —— U.S. ——, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984) (hereinafter *Varig*), the Supreme Court emphasized the continued validity of its original interpretation of the discretionary function exception, stating that it did "not accept the supposition that *Dalehite* no longer represents a valid interpretation of the discretionary function exemption" *Id.* 104 S.Ct. at 2764.[19] The Court then reiterated two dispositive factors to be considered in determining the applicability of the discretionary function exemption. First, it noted that "it is the nature of the conduct … that governs whether the discretionary function exemption applies in a given case." *Id.* 104 S.Ct. at 2765. Second, the discretionary function "plainly was intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals …. Congress wished to prevent judicial 'second guessing' of legislative and administrative decisions

---

**19.** *Varig* involved a suit for damages against the United States. The suit alleged that the Federal Aviation Administration had negligently certified an aircraft design as safe and had negligent-

ly issued a supplemental type certificate for the installation of a cabin heater which did not comply with the applicable FAA regulations.

grounded in social, economic, and political policy through the medium of an action in tort." *Id.* More succinctly, the discretionary function exemption applies when the activity is regulatory in nature.

Even before the *Varig* decision, many federal courts identified banking agency activity as "planning," and therefore, well within the discretionary function exemption. *Emch v. United States,* 630 F.2d 523 (7th Cir.1980), *cert. denied,* 450 U.S. 966, 101 S.Ct. 1482, 67 L.Ed.2d 614 (1981); *Davis v. Federal Deposit Insurance Corporation,* 369 F.Supp. 277 (D.Colo.1974); *see Huntington Towers Limited v. Franklin National Bank,* 559 F.2d 863 (2d Cir.1977).

*Emch* involved allegations of negligence on the part of the Federal Deposit Insurance Corporation and its agents. The plaintiff alleged specifically that the FDIC and its agents failed to exercise reasonable care at the operational level of their regulatory activities, that they allowed fraudulent and misleading reports to be released, and that they made errors in the course of examining the bank, all of which were the proximate cause of the bank's insolvency and its related losses. The plaintiff also alleged that the FDIC took control over the day-to-day banking activities and therefore should be held liable for the resulting losses.

The District Court recognized that when a federal agency exceeds its normal regulatory role and assumes control over the day-to-day activities of the bank, thereby inducing the bank and its directors to rely on the agency's actions to prevent fraud, the United States loses its protection from liability and subjects itself to suit if it has negligently performed the extra-statutory functions which it has undertaken to perform. *Emch,* 474 F.Supp. at 102, citing *In re Franklin National Bank Securities Litigation,* 445 F.Supp. 723, 728, 731, 733–34 (E.D.N.Y.1978). The court found, however, that the allegations in the complaint before it did not allege negligence of the type found by the court in *In re Franklin National Bank Securities Litigation.*

Despite plaintiff's inclusion of the word "operational" in his complaint, the Court is persuaded that a fair reading of the complaint filed in this case fails to disclose a cause of action of the type discussed in *In re Franklin National Bank Securities Litigation, ...* and that the claim as actually set forth is barred by the provisions of 28 U.S.C. § 2680(a) and (h).

*Emch,* 474 F.Supp. at 102.

In Count IV of the defendants' counterclaim under consideration, the defendant directors assert that federal agents exceeded their regulatory role by assuming substantial control over County's banking activities and, therefore had a duty to exercise reasonable care in the maintenance of operations and the disposition of County's assets. The defendants allege further that federal agents breached their duty of care and negligently operated the association.

These allegations are without merit, and must be dismissed. Although this Court may dismiss a claim only if it "appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Conley v. Gibson,* 355 U.S. 41, 44–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957), the Court is not bound to accept conclusory allegations concerning the legal effect of the acts and omissions the plaintiff has set out if these allegations do not reasonably follow from his description of what happened. Wright, Miller, and Kane, 5 *Federal Practice and Procedure: Civil* § 1357, at 597 (1969). A pleader is not able to rely solely on "averments that on their face comprehend activity clearly exempt from liability." *City of Gainsville v. Florida Power and Light Co.,* 488 F.Supp. 1258, 1264 (D.Fla.1980). Count IV of the counterclaim alleges that the United States is susceptible to suit because federal agents exceeded their regulatory role by assuming control over County's daily banking operations. However, there is no evidence in the record that the FSLIC was ever appointed as receiver of County or that it purchased any of County's assets in its corporate ca-

pacity. Defendant's attempt to support their counterclaim by asserting that the FSLIC and the Federal Home Loan Bank Board ("FHLBB") used and threatened to use their *statutory* powers to dominate and direct the operations of County.[20] However, rather than supporting their claim, this contention instead reveals the unavailing nature of it. As in *Emch*, this case is one in which the United States is not subject to suit under the FTCA because the defendants' counterclaim contemplates conduct involving a federal agency's performance of its statutorily mandated duties to regulate and examine member associations. *Emch*, 474 F.Supp. at 102. This is not an "extraordinary case" alleging "operational level negligence of the kind found by the court to have been alleged in *In re Franklin National Bank Securities Litigation*." Here the FSLIC did not exceed its normal regulatory role, and thus, its conduct falls within the discretionary function exemption in 28 U.S.C. § 2680(a).

Moreover, in *First Savings and Loan Insurance Corporation v. Alexander*, 590 F.Supp. 834 (D.Hawaii 1984), the district court held that the discretionary function exemption barred the claim brought against the United States even though the FSLIC assumed the position of receiver of *First Savings and Loan* and clearly directed the disposition of its assets and liabilities. In dismissing the claim, the court found, as a matter of law, that the FSLIC had no duty to warn the defendants about the unsavory financial reputations of individuals with whom it was dealing or about the loans it made and other financial activities in which it was engaged because the nature of the FSLIC's involvement with *First Savings* was purely regulatory and, as such, constituted an exercise of a discretionary function.

The allegations of the defendant in the instant case concern the performance by the FSLIC and its agents of their statutory duties to regulate and examine member associations. Policy judgments and decisions are involved in the performance of these regulatory duties, and "where there is room for policy judgment and decision, there is room for discretion." *Dalehite*, 346 U.S. at 36, 73 S.Ct. at 968. Thus, the defendants' counterclaim alleges, at most, an abuse of congressionally authorized discretion, *see Newberg v. FSLIC*, 317 F.Supp. 1104 (N.D.Ill.1970), and is not actionable under the FTCA. *Dalehite*, 346 U.S. at 33, 73 S.Ct. at 966.

### b. A Claim Against the United States Based on Misrepresentation, Conspiracy, or Interference with Contracts Is Barred by 28 U.S.C. § 2680(h)

Section 2680(h) of 28 U.S.C. provides in pertinent part:

> The provisions of this chapter and section 1346(b) of this title shall not apply to—...
>
> (h) Any claim arising out of ... *misrepresentation, deceit,* or *interference with contractual rights* ... (emphasis added).

### (i) Defendants' Allegations of Misrepresentation, Deceit, and Conspiracy are Barred

The defendant directors assert two counts in their counterclaim against the United States which sound in misrepresentation and deceit. Count V alleges that federal agents made false representations to County with respect to the planned merger with Metropolitan. Count VI alleges that federal agents conspired, with others, to convert County's assets by fraudulently inducing and coercing the directors into a merger with Metropolitan.

The fact that the defendants have separated the allegations of misrepresentation from the charge of conspiracy does not render § 2680(h) inapplicable and thus this exception in the FTCA remains as a bar to the defendants' counterclaim. *See generally Harrah v. Miller*, 558 F.Supp. 702, 705 (S.D.W.Va.1983); *Lynch*, 474 F.Supp. at 551–52 (D.Md.1978); *Colonial Bank and*

---

**20.** Defendants' response to motion to dismiss certain of the counterclaims, p. 3.

*Trust Company v. American Bankshares,* 439 F.Supp. 797, 803 (E.D.Wis.1977) (any claims arising out of or related to misrepresentation are barred by § 2680). "The gist if the action is not the conspiracy charged, but the tort working damage." *James v. Evans,* 149 F. 136, 140 (3d Cir.1906). Where "a claim purports to be grounded in theories other than misrepresentation, the exception set out in 28 U.S.C. § 2680(h) would [still] bar the action if deceit or misrepresentation were a factor relied upon to. maintain a suit." *Goodman v. United States,* 324 F.Supp. 167, 172 (M.D.Fla. 1971), *aff'd per curiam,* 455 F.2d 607 (5th Cir.).

In *Newberg v. FSLIC,* 317 F.Supp. 1104 (N.D.Ill.1970), the court considered a claim against the FSLIC alleging conspiracy to defraud and liquidate a savings and loan association. The plaintiff, a shareholder of the savings and loan association which had been purchased by the FSLIC, alleged further that he had been fraudulently induced to buy shares in the association purchased by the FSLIC. Nonetheless, the court dismissed the claim holding that the allegations failed because of subsections (a) and (h) of § 2680. *Id.* at 1107. This holding reaffirmed the principle that § 2680(h) bars claims based on a failure to use due care in communicating information.

In *United States v. Neustadt,* 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961), a purchaser of property, brought an action under the FTCA for damages allegedly resulting from a negligent inspection of property by an FHA appraisal. The Supreme Court held that the claim was barred by § 2680(h) because this subsection "comprehends claims arising out of negligent, as well as willful, misrepresentation." *Neustadt,* 366 U.S. at 702, 81 S.Ct. at 1298. The court stated further that:

> [i]n practically all such instances it may be said that the Government owes "a specific duty" to obtain and communicate information carefully, lest the intended recipient be mislead to his financial harm. While we do not condone carelessness by Government employees

in gathering and promulgating such information, neither can we justifiably ignore the plain words Congress has used in limiting the scope of the government's tort liability.

*Neustadt,* 366 U.S. at 711, n. 26, 81 S.Ct. 1302, n. 26. *See also Redmond v. United States,* 518 F.2d 811 (7th Cir.1975) (claim based on the Securities and Exchange Commission's failure to warn a purchaser concerning a fraudulent business deal barred).

Likewise, the defendant directors in the instant case cannot circumvent the misrepresentation exception by charging negligence in the FSLIC's efforts to regulate County as an insured savings and loan association. It is clear that the counterclaim asserts misrepresentation, and it is equally clear that such claims are barred by § 2680(h).

▮ Furthermore, numerous allegations of misrepresentation, fraudulent inducements, and failures to communicate are made by the defendants in their counterclaim. Count V specifically alleges that "federal agents falsely represented to County that the merger could be completed expeditiously." Count VI asserts the "federal agents improperly and unlawfully interferred with County's business, assisted and enabled Metropolitan to convert County's assets by fraudulently inducing and coercing the directors into the merger...." By their own terms, the allegations in Counts V and VI involve misrepresentation and deceit and are therefore barred by § 2680(h). This misrepresentation exception applies even where the United States owed a specific duty to communicate accurate information. *See Neustadt,* 366 U.S. at 711, n. 26, 81 S.Ct. at 1302, n. 26.

*(ii) Defendants' Allegation of Interference with Contractual Relationship is Barred*

▮ Count II of the defendants' counterclaim alleges inference with business and contractual relationships and thus is clearly barred by 28 U.S.C. § 2680(h). Although the breadth of the term "interference with contractual rights" is somewhat

unclear, the term has frequently been applied to exclude claims arising in a commercial setting. In *Newberg,* 317 F.Supp. 1104, this exception was held to be applicable to a claim based on an allegation that the FSLIC had wrongfully purchased the assets of an insured savings and loan association in which the claimant had a prior contract to purchase a majority interest. In *Goodman Group, Inc. v. Dishroom,* 679 F.2d 182 (9th Cir.1981), the court appeared to broadly construe the exception in § 2680(h) when it reasoned that the FTCA is explicit in excluding from its coverage "any claim arising out of ... interference with contract rights." *Goodman* involved allegations that the Department of Housing and Urban Development (HUD) tortiously interfered with a contract concerning joint efforts and cooperation between the parties with respect to the continued occupancy of a particular building. The Ninth Circuit concluded that the claim in *Goodman* must fail because of the operation of the exclusionary language in § 2680(h). *Id.* at 187. Finally, in *Ocasio v. Banco Regional De Bayamon,* 581 F.Supp. 1255 (D.Puerto Rico, 1984), the district court noted that the

> [contractual interference] exemption extends not only to an action of unlawful interferences of the existing contracts, but also to actions for the unlawful, interference with prospective contractual relations. *Dupree v. United States,* 264 F.2d 140, 143 (3d Cir.1959), *reh. denied,* 3d Cir. 266 F.2d 373, *cert. denied,* 361 U.S. 823 (1959).

*Ocasio,* at 1258.

Thus, the allegations in Count II of the defendants' counterclaim are unavailing in the defendants' effort to maintain their counterclaim against the United States. They embrace conduct on the part of the United States that is explicitly exempted from suit.

### 2. Defendants' Counterclaim Against the United States Does Not Constitute a Counterclaim for Recoupment

Absent a statutory waiver of sovereign immunity, a counterclaim against the United States for recoupment is appropriate only in those instances where the United States brings suit. Counterclaims against the United States in the nature of recoupment do not require a statutory waiver of sovereign immunity. *See American Export Lines,* 568 F.Supp. 956, 961 (S.D.N.Y.1983). However, the United States has not initiated this action; the FSLIC and not the United States is the plaintiff and thus the defendants' counterclaim may not stand as a counterclaim "in the nature of recoupment." *Id.* at 961.

The FSLIC has a dual nature. It may assert a claim standing in the shoes of a member association pursuant to an assignment and it may exercise its discretion while performing in its capacity as a federal regulatory agency. This case vividly illustrates that dual character. FSLIC brought suit as an assignee of the claim Metropolitan inherited from County and as a federal regulatory agency and is, therefore, susceptible to claims for recoupment under appropriate circumstances. However, the counterclaims against the United States are inappropriate because the United States is not the plaintiff in this action. The United States and its federal agencies are separate entities for the purposes of suit. *See* 28 U.S.C. § 1346(b), 2679(a). The United States is not synonymous with the FSLIC as plaintiff in the original action as it has a separate and distinct nature as a plaintiff in this law suit. *See* 28 U.S.C. § 1345(a).

In *Stewart v. United States,* 655 F.2d 741 (7th Cir.1981), the court rejected the argument that a suit against a federal agency, the Postal Service and its employees, was in effect a suit against the United States.* *Id.* at 742. Thus, a suit brought

---

\* In *Stewart,* the suit against the. postal service *was* a suit against the United States for sovereign immunity purposes. However, the action

brought against the postal service exclusively was not a suit against the United States for the purpose of determining whether filing an action

by a federal agency is not necessarily a suit brought by the United States.

In *Hughes v. United States,* 701 F.2d 56 (7th Cir.1982), the Seventh Circuit also recognized that there is a difference between the United States and its federal agencies. "[G]overnment agencies do not merge into a monolith; the United States is an altogether different party..." *Id.* at 58. In *FDIC v. Glickman,* 450 F.2d 416 (9th Cir. 1971), the Ninth Circuit identified the nature of the FDIC and distinguished it from the United States.[21] The court noted, *inter alia,* that the FDIC was not represented by the United States Attorney as would be the United States if it were a party. *Id.* at 418.

Other federal courts have distinguished between federal regulatory agencies and the United States for the purpose of determining their respective legal rights, liabilities, and standing to sue. In *Lapadula Villani, Inc. v. United States,* 563 F.Supp. 782 (S.D.N.Y.1983), a corporation terminated its operation and was liquidated. The proceeds from the liquidation were insufficient to satisfy the claims against the corporation and were deposited into a fund for which the corporation commenced an action seeking distribution. A battle ensued over the priority to be given to the various competing claims during the distribution. The court held that the FDIC was not entitled to absolute priority pursuant to a federal statute which provides that debts due to the United States shall be satisfied first whenever a person indebted to the United States is insolvent. The court reasoned that:

> The FDIC's profits do not inure to the benefit of the United States and its losses are not born by the United States. Thus, the public treasury will be unaffected by the FDIC's success or failure in recovering the debts owed to it as successor in interest to the claims of Franklin National Bank. It follows that the FDIC is not an integral part of the

governmental mechanism but is rather a separate legal entity serving essentially a proprietary rather than a sovereign function....

*Id.* at 784.

In a slightly different context, courts have considered certain factors in determining whether the United States is an appropriate party in an action. Whether a suit is considered to have been brought against the sovereign is not necessarily determined by whether or not the United States is named. The most availing inquiry is whether "the judgment sought would expend itself on the public treasury or domain." *Clark v. United States,* 691 F.2d 837, 839 (7th Cir.1982) quoting *Land v. Dollar,* 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209 (1946). *See also Hawaii v. Gordon,* 373 U.S. 57, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963).

Where recovery can be had from funds in the possession and control of the agency and not from the United States Treasury, the United States is not involved in the suit. *See Dugan v. Rank,* 372 U.S. 609, 611, 83 S.Ct. 999, 1002, 10 L.Ed.2d. 15 (1963); *Blake Construction Co., Inc. v. American Vocational Association, Inc.,* 419 F.2d 308, 312 (D.C.Cir.1969); *Marcus Garvey Square v. Winston Burnett Construction Co. of California, Inc.,* 595 F.2d 1126, 1131 (9th Cir.1979).

In *Portsmouth Redevelopment and Housing Authority v. Pierce,* 706 F.2d 471 (4th Cir.1983), the Fourth Circuit found the United States to be an appropriate party because there was no separate fund for the payment of operating subsidies within the Housing and Urban Development Authority and the only funds available were from the public treasury. Here, the FSLIC is a government corporation but is not an "integral part of the governmental mechanism." *Lapadula,* 563 F.Supp. at 784, citing *Sloan Shipyards Corp. v. United States Ship-*

---

against the postal service was sufficient to formally include the United States as a distinct party in the action. *See Stewart,* 655 F.2d at 742.

**21.** In *FSLIC v. Quinn,* 419 F.2d 1014 (7th Cir. 1969), the court held that the FSLIC was indistinguishable from the FDIC in terms of its relationship with the United States.

*ping Board Emergency Fleet Corp.*, 258 U.S. 549, 570, 42 S.Ct. 386, 389, 66 L.Ed. 762 (1922). It has, as the source of its funds, insurance premiums and assessments from insured associations. 31 U.S.C. § 9001. These funds, with the exception of amounts needed for operations or investments pursuant to 12 U.S.C. § 1725(d),[22] are held in a special account by the Secretary of the Treasury. 31 U.S.C. § 9107(b). The corporation's reserves are not covered in the General Treasury of the United States as miscellaneous receipts nor are funds deposited by the FSLIC available for general expenditures. Congress also provides the FSLIC with the necessary authority to make a non-administrative expenditures out of its reserves. Title III (98 Stat. 1213) Pub.Law 98–371 (July 18, 1984).

By definition, a counterclaim for recoupment requires that the claim, if satisfied, will reduce, defeat or diminish the government's recovery of damages. *See FDIC v. Lattimore*, 656 F.2d 139, 143, n. 4 (5th Cir.1981), quoting *Frederick v. United States*, 386 F.2d 481, 488 (5th Cir.1967). Were the FSLIC to recover compensatory damages, these funds would be deposited in an account available for use only by the FSLIC. They would not inure to the benefit of the United States nor would any losses arising from this litigation be borne by the United States. The public treasury will not be affected by the success or failure of the plaintiff in this litigation, *see Lapadula*, 563 F.Supp. at 784; nor would the success of the defendants' counterclaim reduce, defeat, or diminish any recovery of damages by the United States. *Lattimore*, 656 F.2d at 143, n. 4.

In sum, the United States is not the plaintiff in this case. *See Hughes*, 701 F.2d at 58; *Stewart*, 655 F.2d at 742; *Lapadula*, 563 F.Supp. at 784. Nor is it an appropriate party to this action because the success of the FSLIC in prosecuting this case would not inure to the benefit of the sovereign in a legally sufficient and direct way, *see Dugan*, 372 U.S. at 611, 83 S.Ct. at 1001; *Blake Construction*, 419 F.2d at 312; *Marcus Gravey Square*, 595 F.2d at 1131, nor would the success of the defendants' counterclaim defeat or diminish its recovery of any damages. *FDIC v. Lattimore*, 656 F.2d at 143, n. 4.[23] Thus, defendants have not presented a counterclaim "in the nature of recoupment" and the United States will not be deemed to have waived its sovereign immunity because it has been initiated a suit in which it has a legally cognizable interest.

### 3. Defendants' Allegations Fail To State a Claim Upon Which Relief May Be Granted

### a. The United States, Through the FSLIC, Owes No Actionable Tort Duty

The United States, through the FSLIC, owes no actionable tort duty to advise or assist member associations in conforming to federal regulations; nor does it owe a duty to preserve the confidentiality of the internal affairs of member associations. Counts I and III of the defendants' counterclaim allege that such duties were owed to County by the FSLIC and the United States.

Two theories are generally offered to justify imposing these duties on federal regulatory agencies. It is argued that a

**22.** These funds "shall be invested in obligations of, or guaranteed as principal and interest by, the United States." 12 U.S.C. § 1725(d).

**23.** The Court has determined that the United States is not an appropriate party to the defendants' counterclaim for recoupment. Moreover, this Court is unable to comprehend any likely circumstance in which the presence of the United States and the unknown federal agents is anything other than superfluous insofar as the defendants' interest in recoupment is concerned. The presence of these parties and the maintenance of the defendants' counterclaim against them has no bearing whatsoever on the counterclaim plaintiffs' ability to diminish or completely offset any damages for which they may be found liable. The necessary party to this counterclaim for recoupment is the FSLIC as it is the only party whose presence has a bearing on the success of the counterclaim for recoupment and the realization of any benefit from such success.

duty is implied from the statutory obligations imposed upon regulatory agencies and that a duty of care derives from specific actions undertaken by an agency during its supervision and regulation of those institutions for which it is responsible. *In re Franklin National Bank Securities Litigation,* 478 F.Supp. at 214.

However, in this case, the FSLIC was under no statutory duty of care, nor is there any indication that it had undertaken responsibility for the day-to-day activities at County. Federal courts have generally found that applicable federal statutes and regulations create no actionable duty to the regulated institutions. *See, e.g., First National Bank of Hudson County v. United States of America,* 599 F.2d 558 (3d Cir. 1979); *Harmsen v. Smith,* 586 F.2d 156 (9th Cir.1978); *Social Security Administration Baltimore Federal Credit Union v. United States,* 138 F.Supp. 639 (D.Md. 1956). In *George Byers Sons, Inc. v. East Europe Import Export, Inc.,* 463 F.Supp. 135 (D.Md.1979), this Court stated that no cause of action will lie against the United States under the FTCA where the claim is based on a violation of a federal statute or regulation, absent a violation of some other common law duty. *Id.* at 137, citing *Devlin Lumber and Supply Corp. v. United States,* 488 F.2d 88, 89 (4th Cir.1973).

▆▆ Moreover, the regulations governing the FSLIC provide that:

> [W]hen, *in his* [the Supervising Agent] *opinion,* such action should be taken, he shall advise and endeavor to assist Federal Savings and Loan Associations and other insured institutions in his Bank district to conduct their operations in conformity with the statutes and the rules and regulations governing them. (emphasis added).

12 C.F.R. § 501.11. This regulation expressly reserves in the supervising agent discretion in deciding whether or not to take action concerning an individual association. Generally, the statutory grant of authority to the FSLIC gives the agency broad discretion in deciding when advice should be rendered to a member institution

and whether an association is engaging in unsafe and unsound practices. *See* 12 U.S.C. § 1725 *et seq.* Such judgments are to be left to the expertise of the agency in which Congress entrusted these decisions.

▆▆ Thus, the FSLIC is under no affirmative duty imposed by statute or by its own regulations, to take any particular action at a specific point in time for the benefit of an insured association. The FSLIC's role is regulatory in nature, and its actions concerning member institutions are primarily discretionary.

Similarly, the allegations in Count III of the counterclaim do not subject the United States to liability through the FSLIC. Another regulation applicable to the FSLIC provides that:

> *Except as authorized by this part or otherwise by the Board,* no officer, employee, or agent of the Board ... shall disclose or permit the disclosure of any unpublished information of the Board to anyone .... (emphasis added).

12 C.F.R. § 505.5(c). Again the applicable regulation gives the agency broad discretion in authorizing the disclosure of information regarding its insured associations. Here, the FSLIC acted within its discretionary powers when it determined which information, if any, should be disclosed to perspective merger partners during the bidding and negotiation process. The relevant statutes and regulations indicate that such determinations by the agency are discretionary.

Furthermore, no cause of action arises because the FSLIC did not exceed its normal regulatory function. Although some federal courts have held that an actionable duty is created if the government goes beyond its normal regulatory activities and substitutes its decisions for those of the bank's directors and officers and "if the bank ... directors reasonably rely ..." thereupon, *In re Franklin National Bank Securities Litigation,* 445 F.Supp. at 733–34, no actionable duty is attributable to the FSLIC as there is no indication in the record that the FSLIC assumed such extensive control over County's operations.

In *In re Franklin National Bank Securities Litigation,* the court identified "the government's recommendations for changing procedures ...; the numerous examinations ...; the FDIC's close supervision of possible merger discussions ...; [and] the demands for changes in key management positions," 478 F.Supp. at 218, as examples of activities consistent with normal regulation. The allegations against the FSLIC in the defendants' counterclaim do not reveal conduct on the part of the agency which constitutes an assumption of control over County's operations which would give rise to an actionable duty to advise and assist the association in conforming its practices to federal regulations. Instead, many of FSLIC's alleged undertakings are similar, if not the same as those activities identified by the court in *In re Franklin National Bank Securities Litigation* as being consistent with normal regulation. *Id.* at 218.

Courts have also declined to find that an actionable duty is owed incident to banking investigations, examinations, or regulatory supervision. In *Social Security Administration Baltimore Federal Credit Union,* 138 F.Supp. at 639, the plaintiff argued that it was owed a duty to use reasonable care in conducting examinations and issuing reports by the United States through its Bureau of Federal Credit Union. The court reviewed the purpose of the banking examinations and held that such investigations and examinations "are not made as a service to the bank or to the credit union." *Id.* at 646. Similarly, in *First National Bank of Hudson County,* 599 F.2d at 558, a bank brought an action against the United States alleging that the FDIC was negligent in its regulatory activities. As do the defendants in this case, the plaintiff bank in *First National Bank of Hudson County* argued that the statute creating the FDIC and assumption by FDIC of a supervisory role over the bank mandated a duty of care to that institution. The court concluded, however, that no such duty existed, suggesting instead that bank examinations and investigations are not "services" and that the performance of an examination did

not create a specific relationship to, or control of, the bank. *Id.* at 562–63. Similarly, the Ninth Circuit has also held that the directors of a defunct bank could not maintain actions for indemnity against the United States for the alleged negligence of the Comptroller in conducting bank examinations. *Harmsen,* 586 F.2d at 158. The court supported its finding by noting that the federal scheme of banking regulation created no duty to shareholders or directors of the individual banks. *Id.* See also *Social Security Administration Baltimore Federal Credit Union,* 138 F.Supp. at 646; *In re Franklin National Bank Securities Litigation,* at 215.

 Absent a showing of an actionable duty, tort liability may not be imposed. *Mahler v. United States,* 306 F.2d 713, 715 (3d Cir.1962), *cert. denied,* 371 U.S. 923, 83 S.Ct. 290, 9 L.Ed.2d 231. Federal statutes and regulations do not impose an actionable duty upon the United States, through the FSLIC, to advise and assist insured associations nor do the allegations in the counterclaim reveal an assumption of control over County by the FSLIC which would give rise to such a duty. Similarly, there is no actionable duty on the part of the FSLIC to refrain from disclosing information concerning County's status. Hence, Counts I and III of the defendants' counterclaim fail to state a claim upon which relief may be granted and may be disposed of in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure.

b. *The Defendant Directors' Constitutional Claims*

The defendant directors alleged two constitutional violations in their counterclaim against the FSLIC, the United States of America, and the John Doe counterclaim defendants. In Count VII, the directors assert that the FSLIC deprived County of this property without due process of law in violation of the Fifth Amendment. In Count VIII, defendants allege that the counterclaim defendant denied County the equal protection of the laws also in violation of the Fifth Amendment. These

claims must be dismissed because the directors cannot assert claims based upon the constitutional rights of County nor can they maintain an equal protection claim in the absence of individual discrimination.

In *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), the Supreme Court stated the general rule that "a litigant may assert only his own constitutional rights or immunities." *Id.* at 429. In *Gregory v. Mitchell*, 634 F.2d 199 (5th Cir.1981), the Fifth Circuit upheld the dismissal of certain constitutional and civil rights claims brought by the stockholders of a stock chartered bank against the FDIC, and the United States. The court noted that neither the officers nor shareholders were the proper parties to pursue a civil rights claim on behalf of the bank, and that any action to be maintained by the bank was the responsibility of the State Superintendent of Banks or the FDIC.[24] This analysis of standing may be appropriately applied in this case. Having received an assignment of County's claims from Metropolitan pursuant to their Assistance Agreement, the FSLIC is the appropriate party to bring a constitutional or civil rights claim on behalf of County.[25] The defendants as former directors of County may not maintain such a claim in this action. *Cf. Gregory*, 634 F.2d at 202.

Defendants' equal protection claim in Count VIII must also be dismissed because the allegations fail to establish a threshold showing of invidious intent or discriminatory purpose on the part of any of the counterclaim defendants. In *Biscayne Federal Savings and Loan v. Federal Home Loan Bank Board*, 572 F.Supp. 997 (S.D.Fla.1983), *aff'd in part and re-*

versed *in part on other grounds*, 720 F.2d 1499 (11th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 2656, 81 L.Ed.2d 363 (May 29, 1984), the court reasoned that where

> *Congress has left to agency discretion the decision of how to deal with insolvent associations, Plaintiff can not complain that it received harsher treatment than did another insolvent association.*
>
> The Court's holding today is not meant to infer that the FHLBB has a free reign to discriminate against an association with whimsical impunity. The Court believes that Plaintiff may present a colorable equal protection claim if it alleges a basis upon which the FHLBB invidiously discriminated against it. *Plaintiff must allege that the decision to appoint a receiver was based on an invidious basis such as race. Uneven treatment does not constitute invidious intent or discriminatory purpose.* If Plaintiff cannot meet this threshold showing, its complaint does not state a claim sufficient to survive a motion to dismiss.

572 F.Supp. at 1043 (emphasis added).

Here, the defendant directors have failed to allege invidious discrimination, and the facts in their counterclaim do not support an inference of such discrimination. Thus, Count VIII of the counterclaim must be dismissed under the reasoning in *Biscayne*.

For those reasons, Counts VII and VIII of the defendant directors' counterclaim fail to state a claim and will be dismissed.

### B. Defendant's Counterclaim Against the John Doe Defendants

Defendant directors have also named John Doe, one or more agents or employees

---

**24.** In *Gregory,* the appellant shareholders enjoyed majority stock ownership in the First Bank of Macon and had elected themselves directors and officers. The manner in which the Bank was operated brought it under increasing scrutiny from Alabama State banking authorities and the FDIC. After many investigations and formal complaints, the state authorities took control of the Bank and transferred certain of its assets and deposit liabilities to an institution formed for that purpose. 634 F.2d at 201.

**25.** If the Assistant Agreement of August 10, 1981, between FSLIC and Metropolitan is construed to provide only for the assignment of claims strictly relating to County's former directors, officers, employees, and agents, then Metropolitan presumably would have standing to assert constitutional claims on County's behalf. In any event, the former directors of County are not the proper parties to pursue such claims in the current action.

of the FSLIC and/or the FHLBB, in their counterclaim. This counterclaim against the John Doe counterclaim defendant(s) must also be dismissed.

■ Insofar as Counts II (interference with contractual relationships), V (misrepresentation), and VI (conspiracy) are asserted against the John Doe counterclaim defendants in their official capacities as agents of the FSLIC and FHLBB, these individuals are entitled to the same immunity as the United States under the applicable exceptions to the FTCA, and the counterclaim against them is subject to the same infirmities as noted above and accordingly must be dismissed. *See Hawaii v. Gordon*, 373 U.S. 57, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963); *Dugan v. Rank*, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963).

■ Although the John Doe counterclaim defendants are being sued in their individual capacities, the actions complained of on the part of the federal agents in Counts II, V, and VI were within their discretionary authority. *See Colonial Bank and Trust Co.*, 439 F.Supp. at 803. It is well established that federal officials are not individually liable for alleged torts based upon acts committed within the scope of their official duties requiring exercise of judgment or discretion. *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959).

Like the court in *Colonial Bank and Trust Co.*, this Court is not persuaded that the actions complained of here were *ultra vires* in nature. The immunity conferred upon the agents' actions is not limited by the purpose of the actions:

The decisions have, indeed, always imposed as a limitation upon the immunity that the official's act must have been within the scope of his powers; and it can be argued that official powers, since they exist only for the public good, never cover occasions where the public good is not their aim, and hence that to exercise a power dishonestly is necessarily to overstep its bounds. A moment's reflection shows, however, that that cannot be the meaning of the limitations without

defeating the whole doctrine. What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him.

439 F.Supp. at 804, quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir.1949).

■ Count IV of the counterclaim against the John Doe counterclaim defendants alleges that federal agents of the FSLIC and/or the FHLBB exceeded their regulatory role by assuming control over County's banking activities and thereafter breached their duty to exercise reasonable care in the maintenance of operations and disposition of County's assets. As noted above, the conduct complained of here resulted from the normal regulatory activities of the FSLIC and the FHLBB and therefore is barred by the discretionary function exception to the FICA. 28 U.S.C. § 2680(a); *Emch*, 474 F.Supp. at 102.

■ Counts I and II of the defendants' counterclaim must also be dismissed because, as in the case of the United States as a counterclaim defendant, the federal agents named in the counterclaim owed no actionable tort duty to advise or assist County to conform to regulations nor did they have a duty to preserve the confidentiality of the internal affairs of County. The reasoning applied in dismissing the counts against the United States is fully applicable here and dismissal based thereupon is appropriate.

■ Similarly, the constitutional allegations in Counts VII and VIII should be dismissed as the counterclaim plaintiffs are no more able to assert claims based on the constitutional rights of County against unnamed federal agents than they were able to assert such claims against the United States. *See Gregory*, 634 F.2d at 202. The director defendants are not the proper parties to assert the constitutional claims of County and these counts against the John

Doe counterclaim defendants must accordingly be dismissed. *Id.*

## C. Defendant Directors' Counterclaim Against the FSLIC

Counts I, III, IV, VII, and VII of the defendant directors' counterclaim against the FSLIC must be dismissed for failure to state a claim upon which relief can be granted.

■ Counts I, III, and IV should be dismissed because, as noted above, the FSLIC did not owe the duties alleged therein. More specifically, Count IV alleges that the FSLIC owed a duty of reasonable care in the operation of County because it exceeded its normal regulatory function and assumed control over County. While the Court should accept the factual allegations in a pleading as true for the purpose of resolving a motion to dismiss, the Court is not bound to accept conclusory allegations concerning the legal effect of the events the claimant has set out if these allegations do not reasonably follow from the description of what happened. Wright, Miller, and Kane, *Federal Practice and Procedure: Civil* § 1357 at 597 (1969). A pleader is not able to rely solely on "averments that on their face comprehend activity clearly exempt from liability. *City of Gainesville*, 488 F.Supp. at 1264. As discussed in earlier portions of this Opinion, the conduct complained of by the defendant directors in their counterclaim does not amount to the assumption of control of County by the FSLIC and thus, the FSLIC did not acquire a duty of care, the alleged breach of which is the basis of Count IV. Count IV must therefore be dismissed.

■ Counts VII and VIII may not be maintained by the defendant directors against the FSLIC because of the previously discussed problems of standing, *see Gregory*, 634 F.2d at 202, and the failure of the counterclaim plaintiffs to allege invidious discrimination pursuant to their equal protection claim in Count VIII. *Biscayne*, 572 F.Supp. 1043.

■ However, the FSLIC is not insulated from liability with regard to Counts II (interference with contractual rights), V (misrepresentation), and VI (conspiracy). The FSLIC may not take refuge in the previously discussed exemptions in § 2680 of the FTCA. When the FSLIC filed its suit against the defendants, it waived its protection from responsive counterclaims for recoupment. *See FDIC v. Lattimore*, 656 F.2d 139, 143 (5th Cir.1981); *FDIC v. Citizens Bank and Trust Company*, 592 F.2d 364, 372–73 (7th Cir.1979); *FSLIC v. Quinn*, 419 F.2d 1014, 1017 (7th Cir.1969); *Frederick v. United States*, 386 F.2d 481, 488 (5th Cir.1968); *United States v. Gilman*, 360 F.Supp. 828, 840 (D.Md.1973); *United States v. Transamerica Insurance Company*, 357 F.Supp. 743, 746 (E.D.Va. 1973). The defense of sovereign immunity may be waived by either statute or by the filing of a suit. *Quinn*, 419 F.2d at 1017. Waiver in the latter circumstance is limited to a counterclaim for recoupment. Such a claim must arise out of the same transaction as the counterclaim and cannot result in an affirmative recovery.[26] Recoupment does not "allow one transaction to be offset against another ...," but it does permit "a transaction which is made the subject of suit by plaintiff to be examined in all its aspects and judgment to be rendered that does justice in view of the transaction as a whole." *Rothensies v. Electric Battery Co.*, 329 U.S. 296, 299, 67 S.Ct. 271, 272, 91 L.Ed. 296 (1946).

■ Counts II, V, and VI are appropriately raised and may be maintained in support of a counterclaim in the nature of recoupment. The acts alleged in these counts are part of the same transaction

---

26. " 'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much on the immediateness of their connection as upon their logical relationship." *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926). *See also Sue and Sum Manufacturing Co. v. B–L–S Construction Co.*, 538 F.2d 1048, 1051 (4th Cir.1976); Wright, Miller, and Kane, 6 *Federal Practice and Procedure: Civil* § 1410 (1972).

which the FSLIC has made the subject of this suit. The complaint brought by the FSLIC alleges that the defendants caused County to require federal assistance and the defendants' counterclaim alleges that the conduct of the FSLIC precipitated or at least contributed to the need for assistance. The defendants' counterclaim does not exceed the amount prayed for by the FSLIC; it merely seeks to reduce or eliminate that amount altogether. Counterclaims for recoupment based on contribution claims against the government have been sustained by other courts, *e.g., Complaint of American Export Lines, Inc.,* 568 F.Supp. 956 (S.D.N.Y.1983), and the claim will be allowed to stand in this case.[27]

Plaintiff's arguments that the defendants' counterclaim should be dismissed because it does not relate to the same transaction as the plaintiff's claim, and therefore is not a counterclaim for recoupment, are not persuasive. Generally, the transaction which is the subject of the plaintiff's complaint is the demise of County. The FSLIC blames the defendant directors for this occurrence[28] and the directors respond by alleging that agents of the FSLIC and/or the FHLBB are responsible for County's failures.[29] Although the allegations concerning who is responsible for County's losses are different, the transaction—County's movement towards insolvency—is the same in both the plaintiff's complaint and the defendants' counterclaim. The court in *First Savings and Loan Insurance Corporation v. Alexander,* 590 F.Supp. 834, 837 (D.Haw.1984), recognized a similar movement as a single transaction when it found that "the pro-

posed amendments [did] state claims that arose out of the original transaction, *i.e.,* the failure and insolvency of First Savings."

More specifically, plaintiff's argument that the amended complaint and the defendants' counterclaim comprehend different transactions ignores an important consideration. The evidence that the defendants will present in their defense against the plaintiff's case is the same or similar to the evidence that would support the contentions in Counts II, V, and VI of their counterclaim. The plaintiff in its case must prove that the defendants violated a legal duty that they owed to County and that these violations were the proximate cause of County's demise. To defeat the plaintiff's case, defendants will probably offer evidence in support of their theory that the proximate cause of County's losses was the concerted and improper activity of the FSLIC and its agents. Therefore, the dismissal of the defendant directors' counterclaim will not reduce the scope of the evidence proffered by the defendants, it would only prevent the jury's examination of the transaction put at issue by the FSLIC's suit in all its aspects. Accordingly, the Court is satisfied that the counterclaim of the defendant directors involves substantially the same transaction that is the subject of the plaintiff's amended complaint.

Plaintiff also maintains that the defendants' counterclaim may not be construed as a counterclaim in the nature of recoupment because it is brought against the FSLIC in a different capacity from that in which it sued the defendants. Plaintiff contends further that the defendants' counterclaim

---

**27.** The plaintiff's argument that a claim for indemnity or contribution cannot be made via a counterclaim is not persuasive to this Court. Plaintiff relies on *Stahl v. Ohio River Co.,* 424 F.2d 52 (3d Cir.1970), to support this proposition. However, the *dicta* in *Stahl* has been widely rejected by other courts and characterized as being "perversely narrow." *Atlantic Aviation Corp. v. Estate of Costas,* 332 F.Supp. 1002, 1007 (E.D.N.Y.1971). The clear majority of courts have found that the contrary position reflects the "recent trend" and "the better view." *Maryville Academy v. Loeb Rhodes and Co.,* 530 F.Supp. 1061, 1070, n. 14 (N.D.Ill.1981); *Index*

*Fund v. Hagopian,* 91 F.R.D. 599, 605 (S.D.N.Y. 1981).

**28.** *See generally* Amended complaint; FSLIC's answers to interrogatories at 22 ("the directors failed to comply with these duties and, as a result, caused County's losses and its insolvency").

**29.** *See generally* counterclaim of defendant directors ("wrongful conduct on the part of the federal agents as the proximate cause of County's losses and damages").

should be dismissed because it is actually a third party claim brought against the FSLIC not as the assignee of County's claims (the capacity in which the FSLIC alleges that it brought the instant suit), but as a federal agency acting in its regulatory capacity.

If the plaintiff were to prevail in its motion to dismiss on this ground, form would triumph over substance. The Court will not sanction the circumvention of this equitable doctrine which mitigates the harshness of sovereign immunity in situations where a government agency initiates a suit against private parties. The policy behind this waiver of immunity is not influenced by the manner in which the government obtained its cause of action. The doctrine is equitable in nature and is predicated on the theory that the government should relinquish its immunity from claims against itself when it utilizes the courts to pursue claims against private individuals or entities so long as the counterclaim arises out of the same transaction and does not seek affirmative relief. *See, e.g., Complaint of American Export Lines, Inc.,* 568 F.Supp. at 961; *FDIC v. Lattimore,* 656 F.2d at 142–43.

Plaintiff does not offer any authority nor is the Court aware of any case where a counterclaim has been barred by sovereign immunity because the government brought suit in its capacity as an assignee of a claim. The cases cited by the plaintiff do recite the general, although not uniform, view that a counterclaim must be filed against an opposing party in the same capacity in which it sues. *Banco National de Cuba v. Chase Manhattan Bank,* 658 F.2d 875, 885 (2d Cir.1982); *Higgins v. Shenango Pottery Co.,* 99 F.Supp. 522, 524 (W.D.Pa.1951). However, these cases hold that a plaintiff, who in his own right, has no real or substantial stake in the main claim, is not subject to a counterclaim individually. The classic example is a trustee who brings suit merely as a representative of a party having a genuine stake in the outcome but who himself has no personal interest in or anything to gain from the litigation. However, an assignee is not in the same exclusively representative position as a trustee and therefore, should not, as a matter of law, be similarly insulated from a counterclaim against him. In the instant case, the FSLIC has a real and substantial interest in the outcome of this suit, even assuming *arguendo* that it is a divisible entity and that it brought suit exclusively in its capacity as the assignee of County's claims. *See Klinzing v. Shakey's, Inc.,* 49 F.R.D. 32, 34–36 (E.D.Wis. 1970). Thus, it rightfully should be amenable to a responsive counterclaim against it.

Moreover, the FSLIC's insistence that it is bringing suit in a different capacity than that for which it is being counterclaimed against, is not persuasive in light of the plaintiff's own representations to the Court. The lack of substance and the ultimately unavailing nature of the plaintiff's argument that it brought this action as an assignee standing in the shoes of County and not as a government agency is revealed by FSLIC's reliance on its status as a government agency for jurisdictional purposes [30] and by its assertion of sovereign immunity. The Court cannot accept the plaintiff's chameleon theory regarding its status in this suit. Furthermore, the Court notes that the receipt of assignments like the one in the instant case is a normal part of FSLIC's performance of its regulatory function. *See FSLIC v. Quinn,* 419 F.2d at 1014; *cf. FDIC v. Bird,* 516 F.Supp. at 647 (FDIC pursued assigned claims against former directors of insolvent bank); *FDIC v. Lattimore,* 656 F.2d at 139 (FDIC purchase of an assigned note during the normal course of its regulatory function).

In short, FSLIC cannot enjoy the benefit of its government status in order to avail itself of this forum and represent itself as sovereign for immunity purposes while also disavowing its governmental nature to avoid a common risk attendant to the instigation of any litigation. Accordingly, Counts II, V, and VI of the defendants'

---

**30.** *See* Amended complaint, ¶ 1, citing 28 U.S.C. § 1345.

counterclaim establish a counterclaim for recoupment and plaintiff's motion to dismiss these counts will be denied.

## IV. FSLIC'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE LIABILITY OF DEFENDANT ABE POLLIN

FSLIC seeks partial summary judgment against defendant Pollin on the issue of liability as to Counts III (negligent breach of fiduciary duty), IV (intentional breach of fiduciary duty), VI (breach of contract), and IX (negligence) of the amended complaint. The parties appear to be in basic agreement that the "liability question is [essentially] the same under each count"—Did Pollin breach his duties to County?

The pleadings and memoranda submitted by counsel for the plaintiff and defendant reveal that there are various factual issues in dispute, including, but not limited to the number of board meetings the defendant missed during his directorial tenure and his knowledge of management personnel. These and other such disputed facts are certainly material, *see generally*, Wright, Miller, and Kane, 10A *Federal Practice and Procedure: Civil* § 2725, at 94 (1969) (facts are material if there existence or nonexistence might effect the result of the action) and summary judgment is inappropriate on that basis alone. Rule 56, Fed.R. Civ.P.

Assuming *arguendo* that the factual allegations of the plaintiff are true, summary judgment would still be inappropriate in this case. Even though there are certain material facts in dispute, the disagreement between the parties appears to have more to do with their differing characterizations of undisputed facts and the legal conclusions to be drawn therefrom, than with the disputed facts themselves. While defendant Pollin's own deposition testimony is potentially injurious to his defense and could provide sufficient evidence for a finding of liability by the trier of fact, a trial is necessary because it will allow the defendant's conduct, even if far less than ideal, to be evaluated and ultimately judged with full regard for the context and circumstances in which it occurred. The context and circumstances in which the defendant's actions and omissions took place are critical in determining whether defendant Pollin performed his duties as a director of County "with the care that an ordinary prudent person in a like situation would use under similar circumstances." [31]

■ Although defendant Pollin's own deposition testimony may present problems for his defense at trial, summary judgment is inappropriate merely because a movant appears more likely to prevail at trial. *Byrd v. Roadway Express*, 687 F.2d 85, 87 (5th Cir.1982). Summary judgment may be granted only when the movant is entitled to relief "beyond all doubt." Wright, Miller and Kane, *supra*, at 98 (citations omitted).

Furthermore, the controversy between the parties concerning the characterizations of undisputed facts and the need for developing a context in which to place those facts also makes summary judgment inappropriate. The Supreme Court and the Fourth Circuit have indicated that summary judgment under Rule 56 should not be granted, even if facts in evidence are undisputed, if the evidence is such that conflicting inferences may permissibly be drawn therefrom. *United States v. Diebold*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Phoenix Savings and Loan v. Aetna Casualty*, 381 F.2d 245, 249 (4th Cir.1967). In *Phoenix Savings*, the Fourth Circuit stated that:

> [S]ummary judgment should [not] be granted if the evidence is such that conflicting inferences may be drawn therefrom, or if reasonable men might reach different conclusions.

\* \* \* \* \* \*

---

**31.** This standard is announced by the plaintiff and is the standard most favorable to it. The Court takes no position on the appropriateness of this standard but accepts it as the correct standard for the purpose of resolving this motion. Plaintiff's motion for summary judgment may be denied even when this legal standard most favorable to the FSLIC is applied.

[S]ummary judgment under Rule 56 should be granted only where it is perfectly clear that *no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law. This is true even where there is no dispute as to the evidentiary facts but only as to the conclusions or inferences to be drawn therefrom...*

381 F.2d at 249 (emphasis added).

More recently, it was stated that: "even ... [if] there ... [is] no controversy over the basic facts, summary judgment should not be granted if the parties disagree as to the inferences which may properly be drawn." *Batchelor v. Legg and Co.,* 55 F.R.D. 557, 561 (D.Md.1972). *See also Winters v. Highlands Insurance Company,* 569 F.2d 297, 299 (5th Cir.1978); *S.J. Groves & Sons Company v. Ohio Turnpike Commission,* 315 F.2d 235, 237–38 (6th Cir.1963); *Central National Life Insurance Company v. Fidelity & Deposit Company of Maryland,* 626 F.2d 537, 539–40 (7th Cir.1980); *Chenette v. Trustees of Iowa College, Grinnell, Iowa,* 431 F.2d 49, 53 (8th Cir.1970); *Sankovich v. Life Insurance of North America,* 638 F.2d 136, 140 (9th Cir.1981).

Finally, in most of the cases cited by the plaintiff in which a corporate fiduciary was found to have breached a duty on facts similar to those presented here, liability was established only *after* a full trial on the merits. *Bowerman v. Hamner,* 250 U.S. 504, 39 S.Ct. 549, 63 L.Ed. 1113 (1919); *Stern v. Lucy Webb Hayes National Training School for Deaconesses and Missionaries,* 381 F.Supp. 1003 (D.C.1974). The source cited by the parties in their discussions of the duty of care owed by a fiduciary addresses the procedural law considerations associated with the application of the substantive law of fiduciaries it sets forth.

'What care' ordinarily prudent and diligent men' would have exercised under the circumstances, in the capacity of directors only, depends upon (1) what the circumstances were, and (2) what the course of ordinarily careful and prudent men is under such circumstances. Both these raise questions of fact to be determined by the trier of facts.

3A W. Fletcher, *Cycolopedia of the Law of Private Corporations* § 1038 (1975) (citations omitted).

■ Thus, the facts concerning the defendant's knowledge and conduct, and the circumstances in which they existed, as well as any determinations of how they relate to the legal standard of corporate fiduciary responsibility are best left for resolution by the trier of fact at trial. Assuming that the legal propositions proffered by FSLIC regarding a director's obligations are correct, they still do not establish that the plaintiff is entitled to summary judgment under all plausible constructions of the undisputed facts as a matter of law. Any resolution of the liability issue concerning the four above mentioned counts in the amended complaint must occur after the facts of the defendant's conduct and the circumstances in which this conduct occurred have been more fully developed at trial so that they may be properly measured against the appropriate legal standard. Accordingly, plaintiff's motion for summary judgment against defendant Pollin must be denied.

## V. DEFENDANT DIRECTORS' MOTION FOR SUMMARY JUDGMENT ON PRIMARY PUNITIVE DAMAGES

In Counts III and IV of the amended complaint, the FSLIC alleges that the defendant directors breached their fiduciary duties to County and it seeks punitive damages. The sum and substance of the defendant directors' argument for summary judgment on the issue of punitive damages is that the FSLIC's own allegations and evidence concerning the acts and omissions of the defendants present a case which questions the business judgment of the directors and nothing more. Defendants insist that after drawing all reasonable inferences from the plaintiff's evidence in the plaintiff's favor, the FSLIC cannot maintain its claim for punitive damages because

its own evidence does not support a conclusion that the conduct of the defendant directors was in any way willful, wanton, malicious, or in reckless disregard of the rights of others.[32] Defendant directors further contend that the FSLIC's case against them contains no allegations of fraud or self dealing, and no evidence of exceptional or aggravating circumstances; that the amended complaint complains only of indifference and inaction, and announces in conclusory allegations that such acts and omissions were "reckless and in intentional breach of their fiduciary duty."

As noted earlier, summary judgment is not appropriate simply because a movant appears more likely to prevail at trial, *Byrd*, 687 F.2d at 87. Summary judgment is particularly inappropriate when, as here, there are facts in the record from which reasonable inferences could reasonably be drawn that would entitle the non-moving party to the relief it seeks. Moreover, in the instant case, there are material facts in dispute or at least undisputed facts which are characterized so differently by the parties that different conclusions and inferences could be drawn from them.

An obvious point of contention between the parties is the knowledge of the defendants during their respective directorial tenures and the nature of their conduct in light of this knowledge. Defendants characterize the disagreement concerning the defendants' knowledge and their subsequent conduct as a dispute over the business judgment of the defendant directors which defendants argue does not make them liable for punitive damages. The FSLIC resists this argument by suggesting that the directors exercised no judgment at all, that their failure to act after repeated and serious warnings about the institution's numerous problems reflects a total abdication of the directorship role and that these repeated failures rise to the level of culpable recklessness.[33] The Fourth Circuit has made it patently clear that the type of conflict noted above is best resolved by the trier of fact *after* trial.

> Summary judgment should [not] be granted if the evidence is such that conflicting inferences may be drawn therefrom, or if reasonable men might reach different conclusions... [I]t is perfectly clear that [summary judgment should be granted only where] no issue of act is involved and inquiry into the facts is not desirable to clarify the application of the law. This is true even where there is no dispute as to the evidentiary facts but only as to the conclusions or inferences to be drawn therefrom...

**32.** This reckless disregard standard for punitive damages was recognized most recently by the Supreme Court in *Smith v. Wade*, 461 U.S. 30, 46–47, 103 S.Ct. 1625, 1635–36, 75 L.Ed.2d 632 (1983), quoting The Second Restatement of Torts § 908(2) (1979). Both parties acknowledge that the recoverability of punitive damages in this case is governed by federal common law, *Fidelity Federal Savings and Loan Association v. De La Cuesta*, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982), because of the high degree of federal interest in the uniform workings and regulation of federal savings and loans. *First Hawaii Bank v. Alexander*, 558 F.Supp. 1128, 1132 (D.Haw.1983).

**33.** The FSLIC cites deposition testimony of board members to support its contention that the defendant directors were represented on the bank loan committee and knew of; *inter alia:*
(1) conflicts of interest on the committee due to the appraisal business of some of the officers on the committee;
(2) construction loan dispursements without sufficient or any work at all having been completed to justify such dispursements; and (3) delinquent and overdue construction loans that had not been acted upon.

Although these and other factual allegations made by the plaintiff may be insufficient individually to support a reasonable conclusion that the defendants acted in a manner recklessly disregarding the rights of other, the Court cannot say, as a matter of law, that these allegations (which must be accepted as true for the purpose of resolving this motion for summary judgment, Wright, Miller, and Kane, *supra*, § 2727, at 124–128), when considered in the aggregate and placed in context, could not support a reasonable conclusion that punitive damages are appropriate. "[I]f the evidence presented on the motion [for summary judgment] is subject to conflicting interpretations, or reasonable men might differ as to its significance, summary judgment is improper." *Id.* at 106–109 (citations omitted).

*Phoenix Savings,* 381 F.2d 245, 249 (4th Cir.1967). *See also U.S. v. Diebold,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Batchelor v. Legg and Co.,* 55 F.R.D. 557, 561 (D.Md.1972).

Finally, the Court is not aware of any case which holds that punitive damages are not recoverable for breaches of fiduciary duty of the kind alleged here. Although most cases awarding punitive damages against directors have been for fraud and self dealing, punitive damages have been held to be recoverable in actions involving a breach of fiduciary duty where the injured party is able to show gross neglect of duty indicating reckless indifference to the rights of others on the part of the wrong-doer. *See, e.g., Ford v. Guarantee Abstract and Title Co.,* 220 Kan. 244, 553 P.2d 254, 269 (1976). Additionally, it has been held that it was within the particular province of the jury to decide, after trial on the merits, whether the defendant's acts constituting a breach of fiduciary duty were done willfully or in reckless disregard. *Poulsen v. Russell,* 300 N.W.2d 289, 296 (Iowa S.Ct.1981).

In short, there are material facts which remain in dispute between the parties. More significantly, different conclusions concerning the appropriateness of punitive damages may be drawn from undisputed facts thereby making summary judgment particularly inappropriate in light of the circumstances surrounding this litigation. *Phoenix,* 381 F.2d at 249. Accordingly, defendants' motion for summary judgment as to punitive damages will be denied.

### SUPPLEMENTAL MEMORANDUM

■ The plaintiff, the Federal Savings and Loan Insurance Corporation ("FSLIC"), has moved to dismiss, *inter alia,* Count IX of the counterclaim filed against it by the "O'Halloran Group" defendants.* Pursuant to a resolution of the Federal Home Loan Bank Board ("FHLBB"), No. 81–447, and as set forth in a letter dated August 10, 1981, federal agents agreed to indemnity certain directors and officers of County Federal for actions or inactions taken by them (between February and August of 1981) at the direction of a Supervisory Agent.

The counterclaim plaintiffs (the O'Halloran Group defendants) seek indemnification from the FSLIC in Count IX of their counterclaim on the theory that if they are to be held responsible for damages that occurred as a result of the actions or inactions of other indemnified defendants, the indemnification agreement should be construed to extend its protections to all parties, including these counterclaim plaintiffs, who have been prejudiced by conduct which would not have occurred "except for the existence of the agreement."

The indemnification agreement to which the counterclaim plaintiffs refer may not reasonably be construed to include them as none of the counterclaim plaintiffs was a party to it. In fact, Mr. O'Halloran and Mr. Heup were no longer officers of County Federal at the time the agreement was executed and the other defendants were never officers or directors of County. Although they may not seek indemnification from the FSLIC pursuant to the August 10, 1981 agreement to which they refer, the counterclaim plaintiffs are not precluded from arguing in their defense that some of the damages being sought against them were not proximately caused by them but

---

* The "O'Halloran Group" of defendants includes:
(1) Thomas J. O'Halloran, Jr., former Vice-President and Chief Loan Officer of County;
(2) Sharon A. Manuel O'Halloran, the wife of defendant O'Halloran who the plaintiff alleges conspired with her husband to acquire certain properties from borrowers of County at below-market prices in exchange for preferential treatment of those borrowers at County;
(3) Michael L. Heup, the former Vice-President and Residential Loan Officer at County;

(4) Lee A. Shoe, an outside construction inspector for County accused of submitting false and inaccurate inspection reports to County; and
(5) Real property Associates ("RPA"), a real estate appraisal business owned and operated by O'Halloran, Heup, and Fisher during their tenure at County, allegedly in conflict with County's service corporation.

were, in fact, caused by the actions or inactions of other defendants acting under the direction of federal agents. Thus, the counterclaim plaintiffs are not prejudiced by the fact that they are not able to pursue their indemnification claim as a counterclaim in this action.

Because the counterclaim plaintiffs were not parties to the indemnification agreement, their counterclaim for indemnification pursuant to its terms must be dismissed for failure to state a claim.

### ORDER

In accordance with the foregoing Memorandum, it is this 5th day of December, 1984, by the United States District Court for the District of Maryland, ORDERED:

1. That defendant Fisher's motion for partial summary judgment BE, and the same IS, hereby DENIED;

2. That the plaintiff's motion to dismiss the counterclaim of the defendant directors against the United States of America BE, and the same IS, hereby GRANTED;

3. That the plaintiff's motion to dismiss the counterclaim of the defendant directors against John Doe BE, and the same IS, hereby GRANTED;

4. That the plaintiff's motion to dismiss Counts I–VIII of the counterclaim of the defendant directors against the FSLIC BE, and the same IS, hereby GRANTED with regard to Counts I, III, IV, VII, and VIII of the defendants' counterclaim;

5. That the plaintiff's motion to dismiss Counts I–VIII of the counterclaim of the defendant directors against FSLIC BE, and the same IS, hereby DENIED with regard to Counts II, V, and VI of the counterclaim;

6. That the plaintiff's motion for partial summary judgment as to liability against defendant Pollin BE, and the same IS, hereby DENIED;

7. That the motion of the defendant directors for summary judgment as to punitive damages BE, and the same IS, hereby DENIED; and

8. That a copy of this Memorandum and Order be sent to all parties.

### ORDER

In accordance with the attached Memorandum, it is this 5th day of December, 1984, by the United States District Court for the District of Maryland, ORDERED:

1. That the plaintiff FSLIC's motion to dismiss the counterclaims of defendant Abe Pollin against the United States of America and the John Doe defendant(s) BE, and the same IS, hereby GRANTED;

2. That the plaintiff's motion to dismiss the counterclaim of defendant Pollin against the FSLIC BE, and the same IS, hereby GRANTED as to Counts I, III, IV, VII, and VIII, and DENIED as to Counts II, V, and VI of the counterclaim;

3. That the plaintiff's motion to dismiss the counterclaim of defendant Reeves against the United States of America and the John Doe defendant(s) BE, and the same IS, hereby GRANTED;

4. That the plaintiff's motion to dismiss Counts I–VIII of defendant Reeves' counterclaim against the FSLIC BE, and the same IS, hereby GRANTED as to Counts I, III, IV, VII, and VIII, and DENIED as to Counts II, V, and VI of the counterclaim; and

5. That a copy of this Order be sent to all parties.

### ORDER

In accordance with the attached Memorandum and Supplemental Memorandum, it is this 5th day of December, 1984, by the United States District Court for the District of Maryland ORDERED:

1. That the plaintiff's motion to dismiss the counterclaims of the O'Halloran Group of defendants against the United States of America and the John Doe defendant(s) BE, and the same IS, hereby GRANTED;

2. That the plaintiff's motion to dismiss the counterclaim of the O'Halloran group of defendants against the FSLIC BE, and the same IS, GRANTED as to Counts I,

III, IV, VII, VIII, and IX, and DENIED as to Counts II, V, and VI of the counterclaim; and

3. That a copy of the Supplemental Memorandum and this Order be sent to all parties.